IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  34728-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MATTHEW HENRY DEVORE, | ) | PUBLISHED IN PART OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Appellant Matthew DeVore pled guilty to second degree murder

and a sentencing aggravator that the killing caused a destructive and foreseeable impact

on persons other than the victim.  The trial court, in findings of fact, found the killing to

cause a noticeable impact on others, particularly on Brenda Losey, the girlfriend of the

victim decedent.  Despite pleading guilty to these facts, DeVore, on appeal, argues that

the aggravator cannot form the basis for an exceptional sentence under his circumstances,

that the aggravator is unconstitutionally vague, and that his exceptional sentence is

excessive.  We disagree and affirm his sentence.

FACTS

This prosecution arises from the killing of Thomas Christian by Matthew DeVore in the presence of Brenda Losey. Losey was the estranged wife of DeVore and the girlfriend of Christian.

On November 24, 2014, Thomas Christian and Brenda Losey sat together holding hands in a Kennewick plasma donation center lobby, while waiting to donate blood. The two high school sweethearts had recently rekindled a romantic relationship. Matthew DeVore, the separated husband of Losey, entered the lobby, ambled toward Christian, removed a knife from his clothes, and stabbed Christian deep in the stomach.

Matthew Devore claims he entered the center to donate blood and without any intent to see or attack Thomas Christian. Devore asserts that his seeing Christian with his wife inflamed his anger and he removed a knife he always carried because of being homeless.

Matthew DeVore's quick attack disabled Thomas Christian from reacting. Brenda Losey frantically attempted to protect Christian from the stabbing by stepping in front of Christian and shoving DeVore. DeVore pushed Losey and Losey, while risking her own life, attempted again to shield Christian from another stab. DeVore ran from the building. At least two other people in the lobby witnessed the stabbing.

As Thomas Christian bled to death in a blood center, Losey sought to stem the

2

bleeding. She called to Christian: "Don't—you can't leave me. Don't you dare leave me." Report of Proceedings (RP) (Sept. 9, 2016) at 34. Coincidentally the plasma center video recorded the stabbing and death of Thomas Christian.

PROCEDURE

On November 26, 2014, the State of Washington charged Matthew DeVore with second degree murder in that DeVore, with intent to kill Thomas Christian, but without premeditation, stabbed and killed Christian. The information also charged DeVore, pursuant to RCW 9.94A.535(3)(r), with committing the murder under the aggravating circumstances of causing a destructive and foreseeable impact on persons other than Christian.

This prosecution carries a long procedural history that we relate because of some relevance to our decision. On December 4, 2014, the trial court held an arraignment for Matthew DeVore. Before the arraignment, DeVore signed a plea of guilty. The plea statement declared, in part:

> On the date charged in Benton County, Washington, I saw Thomas Christian, the man that was living with and dating my wife, at a business in Kennewick. I went to the business early in an attempt to avoid seeing Mr. Christian. When I unexpectedly saw Mr. Christian, I became overcome with emotion and stabbed Mr. Christian once. As a result of my stabbing Mr. Christian, Mr. Christian died. . . .

Clerk's Papers (CP) at 12. At the beginning of the arraignment, defense counsel stated

3

that DeVore wished to enter a guilty plea, and counsel handed to the court Devore's statement on plea of guilty. The State then moved to file an amended information charging DeVore with first degree murder with an aggravating circumstance of impact on others. Second degree murder is a Class A felony that may carry a life imprisonment sentence. RCW 9A.32.050; RCW 9A.20.021(a). One convicted of murder in the first degree must be sentenced to life imprisonment. RCW 9A.32.040. The State and DeVore disputed whether DeVore had entered a valid guilty plea and whether the State could amend the information. The trial court continued the arraignment so the parties could brief the countering arguments.

On December 22, 2014, the trial court convened and announced that the State may not amend its information if amending the information prejudiced Matthew DeVore's substantial rights. The trial court found that postponing the arraignment to obtain legal authority on the question of whether the State could amend the information prejudiced DeVore's substantial right to plead guilty at the time of arraignment. The trial court denied the State's motion to amend the information and granted DeVore an opportunity to plead guilty to second degree murder. The trial court conducted a plea colloquy to determine whether DeVore's plea was knowing, intelligent, and voluntary. The court asked DeVore to supplement, in his own words, the factual basis for the plea. DeVore described the killing:

4

[Mr. DeVore]: Yes, sir.  I never, I never intended to—for what happened happen.  I was under a lot of duress for some number of months and I tried to avoid Mr. Christianson [sic].

And on the day that—on the 24th, when I went there [the plasma donation center], I was trying to get there early to avoid him.  And I did not intend to meet him in any way, but rather to avoid him.

And I was under a lot of, a lot of emotional duress, missing my children.  And unfortunately I tried to confront him to talk to him about it.  And, and I don't know what happened, sir, but—just our conversation was an ongoing conversation between us that always seemed to go wrong.

And I just—at that moment, I—something came over me.  It was like getting hit by a lightning bolt.

And after it happened, I didn't even really recognize what had happened until later.  I was in shock, I think, for an entire week. . . .
. . . .
. . . And that moment when I was standing there, I tried to talk to him and tell him—I was basically trying to tell him that I wanted to see my kids, but unfortunately it came out wrong and I was angry.

And when we started talking, and I felt like he was treating me like a dog and told—just bushed [sic] me off and kind of motioned a kick at me and—I don't believe for any intent but other than just to belittle me.  And that was kind of an ongoing thing.  And I just, I snapped and I drew my, I drew a knife and, and I stabbed him.  I attempted to kill him.

THE COURT: Pardon me?
[Mr. DeVore]: In a—an attempt to kill him.  That is not true.
THE COURT: Anything else you'd like to say, sir—
[Mr. DeVore]: No, sir.

RP (Dec. 22, 2014) at 23-24.

During the December 22 hearing and after Matthew DeVore's statement to the trial court, the State renewed its objection to the acceptance of the guilty plea.  The State argued that DeVore's comments failed to present sufficient facts to support a charge of second degree murder, since, after stating otherwise, he denied any intent to kill.  The

State argued that the court possessed discretion in the interests of justice to reject DeVore's plea.

During the December 22, 2014 hearing, the trial court found that Matthew DeVore pled guilty knowingly, intelligently, and voluntarily, and also declared that DeVore stated an adequate factual basis for his plea to second degree murder. The court, however, questioned whether the entry of DeVore's plea served the interests of justice. Defense counsel and the State further argued their respective pending motions, and the cautious trial court declared a recess.

The trial court reconvened on December 29, 2014. After additional argument from the State and Matthew DeVore, the trial court reversed its December 22 ruling and granted the State's motion to amend, while rejecting DeVore's guilty plea. The trial court reasoned that the administration of justice justified its December 4, 2014 continuance and did not prejudice DeVore's substantial rights. Allowing the State to amend the information would not prejudice DeVore's mental health, right to remain silent, or due process rights. DeVore then refused to enter a plea to the charge of first degree murder and aggravated circumstances. The trial court entered a not guilty plea.

This reviewing court accepted Matthew DeVore's motion for discretionary review to address the trial court's ruling allowing the State to amend its information. We reversed and held that, because DeVore pled guilty and the trial court found the plea

6

knowing, voluntary, and factually supported before the trial court ruled on the State's motion to amend, the court violated DeVore's right to plead guilty when the court reversed itself.

On remand, the trial court conducted a sentencing hearing on Matthew DeVore's plea of guilty to second degree murder and aggravating circumstances. During the hearing, the trial court admitted into evidence and viewed a video of the November 24, 2014 stabbing. The video showed thirty seconds of Thomas Christian and Brenda Losey sitting together holding hands before DeVore entered the plasma center. Losey and Christian saw the defendant for a moment before DeVore drew his knife and stabbed Christian. DeVore acted like he may continue the stabbing so Losey pushed him to the extent the video no longer pictures him.

The sentencing court heard testimony from Brenda Losey regarding the severe impact on her of Thomas Christian's death. She explained that, on the day of the stabbing, she saw the knife and thought she was next. Losey held Christian in her arms as he died and as she begged him not to die. At sentencing, Losey averred: "I can't get the blood out of my head, out of my heart, off my hands. Though you don't see it, it's still there. I relive this every day." RP (Sept. 9, 2016) at 34. Many of Christian's family members also spoke about the impact of his death.

Matthew DeVore had no previous convictions. The charge of murder in the

7

second degree with an offender score of zero merits a standard range sentence varying

from ten years and three months to eighteen years and four months. The maximum

sentence for second degree murder, a Class A felony, is life imprisonment. RCW

9A.32.050; RCW 9A.20.021(a). This maximum sentence looms important in our later

legal analysis.

During sentencing, the State of Washington asked for the high end of the standard

range of two hundred and twenty months and, based on the aggravating factor, asked for

another one hundred and ten months, for a total of three hundred and thirty months or

twenty-seven years and six months. Matthew DeVore argued that he should receive a

sentence only within the standard range because he committed no previous crimes. He

contended that the State's request for fifty percent above the standard range was

excessive. In rebuttal, the State mentioned that DeVore had been convicted of assaulting

his son. We do not know then why DeVore bore an offender score of zero.

The trial court accepted the State's request and sentenced Matthew DeVore to

three hundred and thirty months' confinement. In making this determination, the court

highlighted the video that showed the heinous nature of the crime. The sentencing court

entered findings of fact that read, in part:

> 5. The video showed the significant impact on Ms. Brenda Losey
> who was present at the time of the stabbing. The Court found that it was
> difficult to watch the video and that to actually have been present, as Ms.
> Losey was, would have an extremely significant impact on her.

8

6. The Court heard from other family members who, although they were not present at the time of the murder, were significantly impacted by this event.

. . . .

12. The Court considered what a just sentence would be. The Court looked at what is commensurate with the nature of the defendant's action. The Court found that this is a heinous crime the defendant has pled guilty to and has been convicted of.

13. The Court considered the severe impact that the crime had, particularly, on Ms. Losey and how it has impacted not only her, but her family, Mr. Christian's family, and even the defendant's family. The Court heard testimony from Ms. Losey at sentencing about the severe impact it has had on her life. . . .

14. After viewing the video, listening to how the crime has impacted Mr. Christian's family and Ms. Losey and her family, listening to arguments made by Defense Counsel and Prosecution, and hearing from the defendant, the Court found that an exceptional sentence is justified.

CP at 128-29.

## LAW AND ANALYSIS

On appeal, Matthew DeVore raises three challenges to his sentence of twenty-seven years and six months. First, he contends the sentencing aggravator of a foreseeable and destructive impact on others offers a vague standard to apply that renders the aggravator unconstitutional. Second, he argues that the aggravating factor cannot form the basis for an exceptional sentence because all family and loved ones of a murder victim suffer from the victim's death and so the circumstances of this appeal do not differ from other second degree murder cases. Third, DeVore maintains that the trial court imposed a clearly excessive sentence. In the published portion of this opinion, we

9

address DeVore's constitutional contention. We reserve discussion of DeVore's statutory

arguments to the end of the opinion.

We note that, during sentencing, Matthew DeVore argued the excessive nature of

a three hundred and thirty months' sentence. Nevertheless, he did not argue that the

sentencing court could not employ the impact on others aggravating factor in order to

impose an exceptional sentence because all second degree murders involve the same

impact suffered on the victim's family. Nor did DeVore challenge the constitutionality of

the aggravating factor.

Generally, issues not raised in the trial court may not be raised for the first time on

appeal. *State v. Nitsch*, 100 Wn. App. 512, 519, 997 P.2d 1000 (2000). This rule,

however, is not an absolute bar to review. *State v. Nitsch*, 100 Wn. App. at 519. Illegal

or erroneous sentences may be raised for the first time on appeal. *State v. Nitsch*, 100

Wn. App. at 519. Matthew DeVore's constitutional argument might also be reviewable

for the first time on appeal because the contention concerns a manifest constitutional

error. RAP 2.5(a)(3); *State v. Scott*, 110 Wn.2d 682, 686-87, 757 P.2d 492 (1988).

Matthew DeVore pled guilty to the aggravating factor. We wonder if his plea of

guilt constitutes a waiver to challenging the imposition of a sentence above the standard

range or to the constitutionality of the aggravating factor. We also wonder if his guilty

plea constitutes invited error.

The State does not contend that Matthew DeVore cannot raise any of his three assignments of error on appeal. For this reason, we do not address whether DeVore waived any arguments by his plea to the aggravating factor, whether he invited error, whether we may review his sentence because of a purported illegal sentence, or whether DeVore raises a manifest constitutional error. This opinion should not be construed as a ruling in Matthew DeVore's favor on these questions.

Vagueness

Matthew DeVore asks that we strike the destructive impact sentencing aggravator as unduly and unconstitutionally vague in violation of the due process clause. He emphasizes the ambiguity found in the words "destructive," "foreseeable," "impact," and "others."

The law demands that the legislature describe a crime in specific, not vague, language, so that citizens and law enforcement may comprehend the variety of human conduct that the legislature intends to proscribe, prevent, and punish. *City of Spokane v. Douglass*, 115 Wn.2d 171, 179, 795 P.2d 693 (1990). The legislature holds a duty to write statutes with specificity. *State v. Richmond*, 102 Wn.2d 242, 248, 683 P.2d 1093 (1984).

In the State of Washington, the demand for precision in criminal statutes arises from three constitutional provisions. Both the United States and the State of Washington

Constitution prohibit the government from depriving one of life, liberty, or property without due process of law.  U.S. CONST. amend. XIV, § 1; CONST. art. I, § 3.  In addition, article I, section 22 of the Washington Constitution, grants an accused, in a criminal prosecution, "the right . . . to demand the nature and cause of the accusation against him."  These constitutional sections generate the void for vagueness doctrine.

Before we address the vagueness or concreteness of the language in the statutory aggravator, we must first determine whether the void for vagueness doctrine applies in the context of a sentencing factor that may increase the length of incarceration, but not beyond the statutory maximum for the crime.  The State, based on *State v. Baldwin*, 150 Wn.2d 448, 78 P.3d 1005 (2003), contends sentencing aggravating factors are not subject to a vagueness challenge.  Matthew DeVore agrees that *Baldwin* stands for such a proposition, but contends that United States Supreme Court decision and *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), overrule *Baldwin*.  Based on another recent United States Supreme Court decision, *Beckles v. United States*, ___ U.S. ___, 137 S. Ct. 886, 197 L. Ed. 2d 145 (2017), we agree with the State.

In *State v. Baldwin*, Jeanne Baldwin challenged sentencing aggravators based on former RCW 9.94A.120 (2000) and former RCW 9.94A.390 (2000).  The first statute allowed an exceptional upward sentence when a theft involved a degree of sophistication greater than the typical theft.  The second statute allowed the exceptional sentence when

12

an attempted monetary loss substantially exceeded the typical loss for theft. The statutes'

present equivalents lie in RCW 9.94A.535(3)(d)(ii) and (iii). Before the state Supreme

Court, the State argued that the sentencing scheme assailed by Baldwin was not

susceptible to a vagueness attack since the void for vagueness doctrine applies only to

laws that proscribe or prescribe conduct and not to laws that provide sentencing

directives for judges.

The *Baldwin* court noted that a vagueness analysis encompasses two due process

concerns. First, criminal statutes must be specific enough that citizens gain fair notice of

the proscribed conduct. Second, laws must provide ascertainable standards of guilt to

protect against arbitrary arrest and prosecution. *State v. Baldwin*, 150 Wn.2d at 458. The

court then reasoned that both prongs of the vagueness doctrine target laws that prohibit or

require conduct. The sentencing statutes challenged by Jeanne Baldwin did not define

conduct nor did they allow for arbitrary arrest and criminal prosecution by the State.

According to the *Baldwin* court, sentencing guidelines do not inform the public of the

penalties attached to a particular criminal act nor do they vary the statutory maximum and

minimum penalties assigned to illegal conduct by the legislature. A citizen reading the

statutes would not need to guess at the potential consequences that might befall one who

engages in prohibited conduct because the guidelines do not set penalties. Thus, the due

process considerations that underlie the void-for-vagueness doctrine have no application

13

in the context of sentencing guidelines. The state Supreme Court rejected Baldwin's

vagueness challenge to the two statutory aggravators.

The *Baldwin* court did not recognize that statutory aggravating factors indirectly

proscribe crimes with egregious circumstances or harm. The statutes thereby impose

punishment because of identifiable conduct. Although an aggravating factor may not

lead to a sentence above the underlying crime's maximum term, the aggravating factor

greatly influences the penalty assessed in individual cases.

The *Baldwin* court did not discuss *United States v. Batchelder*, 442 U.S. 114, 99

S. Ct. 2198, 60 L. Ed. 2d 755 (1979), which applied vagueness principles to statutes that

fix sentences. Presumably the *Baldwin* court would distinguish *Batchelder* in that Jeanne

Baldwin's challenge did not entail a challenge to the maximum sentence for her crime of

identity theft, but only involved guidelines for a range between the fixed limits of the

sentence. Under Washington law, an aggravating factor may not increase the offender's

sentence beyond the maximum penalty imposed for the crime. *State v. Gore*, 143 Wn.2d

288, 313-14, 21 P.3d 262 (2001).

We note the overruling of *State v. Gore* by *State v. Hughes*, 154 Wn.2d 118, 110

P.3d 192 (2005). *State v. Suleiman*, 158 Wn.2d 280, 143 P.3d 795 (2006), in turn,

mentions the overruling. Nevertheless, we do not consider *Hughes* to overrule Gore's

rule that an aggravating factor may not increase the sentence beyond the maximum

14

penalty imposed for the crime. *Hughes* instead held that, for purposes of whether the sixth amendment demands that a jury decide aggravating factors in order to increase a sentence, the "maximum sentence" is the maximum a judge may impose without any additional findings. 154 Wn.2d at 131. Hughes did not address the maximum sentences available for the various classes of felonies and misdemeanors under RCW 9A.20.021. Nor did *Hughes* or *Suleiman* entail a challenge to the concreteness of a statute. *Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006), overturned *State v. Hughes*, but on other grounds.

When the Washington Supreme Court decided *State v. Baldwin*, the United States Supreme Court had yet to decide *Blakely v. Washington*, 542 U.S. 296 (2004), which demands that a jury find most aggravating sentencing factors beyond a reasonable doubt. We find *Blakely* unhelpful in our context. We are unaware of a rule that distinguishes between jury decisions and judge determinations in the setting of the void for vagueness doctrine. *Blakely* did not entail a challenge to the vagueness of a crime of a sentencing factor.

*Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551 (2015) has some relevance to this appeal. In *Johnson*, the government convicted Samuel Johnson of being a felon in possession of a firearm. Under the federal Armed Career Criminal Act of 1984, 18 U.S.C. section 924, one convicted of the crime faces a more severe punishment

if he has three or more previous convictions for any felony that "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. §924(e)(2)(B)(ii). Under the act, a finding involving such a potential risk increases a defendant's prison term from a statutory maximum of ten years to a minimum of fifteen years. Johnson challenged the statutory language as violative of the constitution's prohibition against vague criminal laws. The Court devoted most of its opinion to addressing whether the statutory aggravator gave fair notice to the public. Before this discussion, however, the Court noted that the statute addresses "conduct." *Johnson v. United States*, 135 S. Ct. at 2557. The court held:

> We are convinced that the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges. Increasing a defendant's sentence under the clause denies due process of law.

*Johnson v. United States*, 135 S. Ct. at 2557.

We must distinguish *Johnson v. United States* with this past summer's United States Supreme Court opinion in *Beckles v. United States*, 137 S. Ct. 886, 197 L. Ed. 2d 145 (2017). Travis Beckles challenged for vagueness a provision of the federal advisory sentencing guidelines. The guidelines include a clause defining a "crime of violence" as an offense that "involves conduct that presents a serious potential risk of physical injury to another." One convicted of a crime that qualifies as a crime of violence is eligible for

16

a sentence enhancement under the federal guidelines. The language echoes the sentencing factor contained in the Armed Career Criminal Act at issue in *Johnson v. United States*. Unlike in *Johnson*, however, the Supreme Court held that the void for vagueness doctrine does not cover the advisory guidelines.

The *Beckles* Court observed that vagueness concerns apply to laws that define criminal offenses and that "fix the permissible sentences for criminal offenses." 137 S. Ct. at 892. Stated differently, laws "must specify the range of available sentences" with sufficient clarity. *Beckles v. United States*, 137 S. Ct. at 892. The *Beckles* Court concluded that the advisory guidelines did not fix the permissible range of sentences. To the contrary, the guidelines merely guided the exercise of a court's discretion in choosing an appropriate sentence within the statutory range. Therefore, the guidelines were not subject to a vagueness challenge under the due process clause. This holding remains true even though the trial court holds unfettered discretion when sentencing inside a statutory range.

We consider Matthew DeVore's appeal akin to *Beckles v. United States*, not *Johnson v. United States*. The destructive impact factor does not increase the permissible sentence of the offender. The trial court must still sentence the defendant within the

17

statutory maximum of the crime, life imprisonment. Therefore, we hold that challenges to the destructive impact factor and other aggravating factors under RCW 9.94A.535(3) do not merit review under the void for vagueness doctrine. We do not then address any vagaries of the aggravating factor.

This court decided *State v. Chanthabouly*, 164 Wn. App. 104, 262 P.3d 144 (2011) after the United States Supreme Court issued *Blakely v. Washington*, 542 U.S. 296 (2004). We noted that an offender could not challenge the destructive impact factor under the void for vagueness doctrine because the factor does not increase the maximum possible sentence for the subject crime. We rejected the application of *Blakely* because a jury found the aggravating factor beyond a reasonable doubt.

Matthew DeVore pled guilty to the aggravating factor of a destructive impact. He pled guilty in order to avoid an amended information charging him with first degree murder, a charge that likely would have led to life imprisonment. By pleading guilty, he impliedly agreed that a jury would find the destructive impact factor beyond a reasonable doubt. The sentencing court confirmed the presence of the factor.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with RCW 2.06.040, the rules governing unpublished opinions.

Destructive and Foreseeable Impact on Others

The trial court imposed an exceptional sentence on Matthew DeVore because of the impact of the murder on people other than Thomas Christian. The Sentencing Reform Act of 1981, chapter 9.94A RCW, allows exceptional sentences above the standard sentencing range for the crime of conviction in numerous circumstances. DeVore's trial court relied on RCW 9.94A.535(3)(r). The statute declares:

> The court may impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence. . . .
> Whenever a sentence outside the standard sentence range is imposed, the court shall set forth the reasons for its decision in written findings of fact and conclusions of law. . . .
> . . . .
> (3) Aggravating Circumstances—Considered by a Jury—Imposed by the Court
> Except for circumstances listed in subsection (2) of this section, the following circumstances are an exclusive list of factors that can support a sentence above the standard range. . . .
> *(r) The offense involved a destructive and foreseeable impact on persons other than the victim.*

(Emphasis added.) We will refer to RCW 9.94A.535(3)(r) as the "destructive impact" factor.

The Sentencing Reform Act authorizes exceptional sentences to impose additional punishment when the particular offense at issue causes more damage than that

19

contemplated by the statute defining the offense.  *State v. Davis*, 182 Wn.2d 222, 229, 340 P.3d 820 (2014).  An exceptional sentence is not justified if it is based on factors necessarily considered by the legislature in establishing the standard sentence range.  *State v. Law*, 154 Wn.2d 85, 95, 110 P.3d 717 (2005).  The aggravating factor must "be substantial and compelling to distinguish the crime in question from others in the same category."  *State v. Law*, 154 Wn.2d at 95 (quoting *State v. Ha'mim*, 132 Wn.2d 834, 840, 940 P.2d 633 (1997)).

The legislature enacted RCW 9.94A.535(3)(r) in 2005.  LAWS OF 2005, ch. 68, § 3.  Before adoption of the subsection, sentencing courts sometimes imposed exceptional sentences based on a crime's harmful impact on nonvictims in a distinctive manner not usually associated with the commission of the subject crime.  *State v. Johnson*, 124 Wn.2d 57, 63-64, 873 P.2d 514 (1994); *State v. Mulligan*, 87 Wn. App. 261, 263, 941 P.2d 694 (1997); *State v. Way*, 88 Wn. App. 830, 832, 946 P.2d 1209 (1997).  RCW 9.94A.535(3)(r) essentially codifies case law.  Under the statute, an exceptional sentence continues to require an impact of a destructive nature not normally associated with the commission of the offense in question.  *State v. Webb*, 162 Wn. App. 195, 206, 252 P.3d 424 (2011).

Before adoption of RCW 9.94A.535(3)(r), this court held that the impact of a crime on persons not present at its commission can support an exceptional sentence.

20

*State v. Barnes*, 58 Wn. App. 465, 474-75, 794 P.2d 52 (1990); *State v. Crutchfield*, 53 Wn. App. 916, 928, 771 P.2d 746 (1989).  Nevertheless, we particularly applied the factor when eyewitnesses observed an assault.  *State v. Cuevas-Diaz*, 61 Wn. App. 902, 906, 812 P.2d 883 (1991); *State v. Barnes*, 58 Wn. App. at 475.

This court dissected the term "destructive impact" in *State v. Webb*, 162 Wn. App. 195:

> "Destructive" is an adjective meaning[:] "[H]aving the capability, property, or effect of destroying: causing destruction."  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 615 (1993).  An exceptional sentence based on a foreseeable and destructive impact on others requires an impact that is *foreseeable to the defendant* and "of a destructive nature that is not normally associated with the commission of the offense in question."  When used as a noun, the definition of "impact" is[:] "[T]he force of impression of one thing on another: . . . a concentrated force producing change: an esp. forceful effect checking or forcing change."  WEBSTER'S supra, at 1131.

(Emphasis added) (internal citations omitted) (some alterations in original).  We may not find these definitions particularly helpful, but we note that the trier of fact determines foreseeability from the vantage point of the offender.  *State v. Crutchfield*, 53 Wn. App. at 928 (1989) also adjudged foreseeability from the standpoint of the defendant.

Matthew DeVore argues his killing of Thomas Christian impacted Christian's family no differently from the effect murder has on any other victim's family.  Stated differently, DeVore argues that nothing substantial and compelling distinguishes his

crime from other second degree murder offenses. DeVore also claims the legislature already accounted for the emotional toll on a victim's family when setting the standard range.

We might agree with Matthew DeVore with respect to the emotional impact on Thomas Christian's mother, children, siblings, and other extended family members. The psychological toll of the murder on Christian's family members must be severe and enduring, but all murder victims' kin experience similar emotional trauma. Nevertheless, the trial court based the exceptional sentence also on the impact of Christian's death on his girlfriend, Brenda Losey, who witnessed the death. As noted above the destructive impact factor particularly applies to eyewitnesses.

Brenda Losey feared for her life, but fearlessly sought to protect her boyfriend. She desperately grasped and sought to save her loved one's life as he expired in her clutch. As a percipient witness to the killing, Losey daily replays the killing in her thoughts. Matthew DeVore knew of the presence of Losey next to her love, Thomas Christian, and thus DeVore could foresee the impact on her. The emotional trauma suffered by Losey differs from the trauma suffered by other loved ones of a murder victim.

*State v. Chanthabouly*, 164 Wn. App. 104 (2011) parallels Matthew DeVore's appeal. A jury convicted Douglas Chanthabouly of second degree murder with the

aggravating factor that the murder involved a destructive and foreseeable impact on persons other than the victim. Chanthabouly attended high school. He approached fellow student Samnang Kok in the hallway before first period, pulled a gun, shot Kok in the head from a distance of one foot, and shot Kok two more times after Kok collapsed to the floor. An unknown number of students saw the murder, and an unknown number of students, teachers, and administrators heard the shooting. One student saw the killing from three to four feet from Chanthabouly. A second student observed the execution from eight to ten feet from Kok. The second student heard Chanthabouly comment: "'Boom, mother fucker,'" before firing the second shot. *State v. Chanthabouly*, 164 Wn. App. at 125. During trial, five adults and one student testified to the impact of the shooting, including fear among the student population while inside the school building and students' need for counseling.

On appeal, in *State v. Chanthabouly*, this court affirmed the aggravated sentence based on the foreseeable and destructive impact on others. We held that a rational trier of fact could have found the shooting involved a destructive impact. We noted that two students observed the shooting from close proximity. We commented that some administrators suffered a destructive impact when attempting to save Sam Kok's life.

The law generally demands that the jury determine the presence of an aggravating factor. Matthew DeVore pled guilty to the aggravator so no jury finding followed. The

23

trial court, however, justifiably confirmed the presence of a destructive and foreseeable impact on others. The impact on Brenda Losey coincides with the impact on the eyewitnesses in *State v. Chanthabouly*.

In a footnote, Mathew DeVore alternatively argues that, even if this court rules that the murder's impact on Brenda Losey adequately distinguishes his crime from other murder offenses, we should still remand for resentencing. DeVore emphasizes that the sentencing court drew no distinction in its findings of fact between the impact on Losey and the impact on members of Thomas Christian's family. We disagree. One finding of fact states that the video showed the significant impact on Brenda Losey, who was present at the time of the stabbing. This finding notes a distinct impact on Losey.

Excessive Sentence

Matthew DeVore next argues that his exceptional sentence is excessive because the one hundred and ten months' sentence imposed for the aggravator lasts longer than if he had stabbed or shot, but not killed, Brenda Losey, the other person whose distress led to the aggravated sentence. A conviction of first degree assault for stabbing Losey would carry a presumptive mid-range sentence of one hundred and three months. WASH. STATE CASELOAD FORECAST COUNCIL, 2016 WASHINGTON STATE ADULT SENTENCING GUIDELINES MANUAL 214 (2016).

This court reviews an exceptional sentence only for abuse of discretion. *State v.*

24

*Ritchie*, 126 Wn.2d 388, 392, 894 P.2d 1308 (1995). If the record supports the reasons for the exceptional sentence and justifies an increased exceptional sentence, a reviewing court may reverse only if no reasonable person would have imposed the sentence. *State v. Vaughn*, 83 Wn. App. 669, 680-81, 924 P.2d 27 (1996).

If the trial court does not base its sentence on an improper reason such as race, this reviewing court will not deem the sentence excessive unless its length, in light of the record, shocks the conscience. *State v. Ritchie*, 126 Wn.2d at 396, *aff'd, sub nom. State v. Ritchie*, 126 Wn.2d 388 (1985). A harsh sentence is not excessive. *State v. Scott*, 72 Wn. App. 207, 221, 866 P.2d 1258 (1993). For example, in *State v. Scott*, Jai-Mar Eli Scott was convicted of murder in the first degree. The sentencing court entered findings of fact outlining its reasons for departure from the standard range, including Scott's abuse of trust, the victim's vulnerability, deliberate cruelty, and multiple injuries inflicted in the commission of the crime. The defendant's standard range was 240 to 320 months. The trial court imposed an exceptional sentence of 900 months which this court affirmed because the sentence did not shock the conscience.

Matthew DeVore's exceptional sentence is fifty percent beyond the standard range. We have accepted much higher departures such as in *State v. Scott*. In *State v. Vaughn*, 83 Wn. App. at 681 (1996), we approved a sentence 2.5 times greater than the top of the standard range.

Our trial court record supports the exceptional sentence. Matthew DeVore committed the murder in public. Both strangers and the victim's girlfriend experienced the shock and horror of the stabbing. The girlfriend constantly relives the incident. Adding one hundred and ten months as an exceptional sentence does not shock the conscience.

## CONCLUSION

We affirm Matthew DeVore's sentence of three hundred and thirty months. We deny the State costs on appeal because of the indigency of DeVore.

_____
Fearing, C.J.

WE CONCUR:

_____        _____
Siddoway, J.                            Lawrence-Berrey, J.

26