IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 80849-4-I |
| Respondent, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| CHRISTOPHER SEAN BURRUS, | |
| Appellant. | |

CHUN, J. — Christopher Burrus poured gasoline on Kasey Busch and threw a lit flare at him, causing him to catch fire. Busch suffered second and third degree burns on 30 percent of his body. The State charged Burrus with attempted first degree murder with the aggravating factor that his conduct manifested deliberate cruelty. The jury found Burrus guilty as charged. Based on the jury's finding of deliberate cruelty, the trial court imposed an exceptional sentence. Burrus challenges the to-convict instruction and the exceptional sentence. We affirm.

## I. BACKGROUND

Burrus spent time at an industrial warehouse referred to as "the shop," where he would occasionally work, salvaging materials and electronics, and sleep. Joe Colella, whose family owned the shop, and Ryan Moore lived there and Burrus had known them for years. Busch occasionally looked for welding work at the shop and knew Burrus, Colella, and Moore.

During the summer of 2017, following a dispute, Colella told Burrus he was not welcome in the shop. By November, Burrus was staying with his then-girlfriend Chantal Lotorto and was not sleeping at the shop. Burrus claims that Lotorto dated Busch before dating him, but the State disputes this. Busch testified that he and Lotorto never got along and that he suspected that she had stolen some of his work tools.

In November 2017, Busch lost his home and began sleeping at the shop. A few days later, Lotorto went to the shop to remove her belongings upon Colella's request. Burrus went with her. Because he was unwelcome in the shop, Burrus waited outside by Lotorto's van. Busch noticed that Lotorto was carrying a specialized wrench that he suspected she had stolen from him. He accused her of stealing it and grabbed it. The two struggled over the wrench and then Busch released it, causing Lotorto to fall backwards. Busch testified that Lotorto then raised the wrench as if to strike him, he picked up a tool to defend himself, and she turned and left the shop. Lotorto told Burrus that she had fought with Busch and showed him a small mark on her face that she indicated that Busch caused. Burrus said he was "a little hurt and frustrated" as a result.

Busch went outside to speak with Burrus and offered him $50 to get the wrench back from Lotorto. Busch testified that during this conversation he saw no indication that Burrus was angry with him.

Busch and Moore then left the shop to go to a scrapyard; they were gone for about an hour. When they returned, Moore saw Burrus poke his head around the corner of the building and then duck back into the alley where Lotorto's van

2

was parked. Burrus emerged from the alley holding a "Big Gulp" cup. As Burrus approached the car, Busch saw something in Burrus's sleeve, which he thought might be his stolen wrench. Burrus spoke briefly with Moore and then approached Busch. He called out to Busch and threw the contents of the cup on Busch. Busch immediately realized that the cup contained gasoline and began to flee. Burrus then lit a roadside flare and threw it at Busch, causing him to catch fire. Busch rolled into the street desperately trying to extinguish the flames. Burrus fled the scene. Moore tried to put out the fire but caught himself on fire as well. Colella dragged a hose from the shop and extinguished the flames. Multiple passersby called 911. When first responders arrived, Busch was in extreme pain. Busch suffered second and third degree burns on over 30 percent of his body. Busch underwent skin grafts and remained in the hospital for almost two months to recover.

The State charged Burrus with attempted first degree murder with the aggravating factor that his conduct manifested deliberate cruelty.

During trial, Burrus admitted to dumping gasoline on Busch and throwing a lit flare at him. But he denied intending to kill Busch. Burrus testified that his intention was to intimidate Busch and look like he was standing up for Lotorto in front of the others by causing a quick burst of flames. Burrus said he expected that lighting gasoline would result in a similar flame as lighting lighter fluid and was horrified by what actually happened. Burrus said he had not decided to engage in this conduct until he was approaching Busch and that he had the

gasoline in a cup because he had been "huffing"[1] it. He also said that he had the flare because he had picked it up and put it in his pocket earlier that day.

The trial court instructed the jury on attempted first degree murder. The to-convict instruction for attempted first degree murder did not contain the element of premeditation. After the jury had begun its deliberation, Burrus requested that the trial court instruct the jury on the lesser included count of attempted second degree murder. The court did so. The parties gave supplemental closing arguments based on the added instruction.

The jury found Burrus guilty of attempted first degree murder and found that the State proved the aggravating factor of deliberate cruelty.

The State sought an exceptional sentence of 300 months. The standard sentence range for the crime is 180–240 months. During the sentencing hearing, Busch asked the court to give Burrus the lowest sentence possible. Burrus requested a mid-range sentence of 210 months and apologized to Busch. The trial court found that the aggravating factor of deliberate cruelty was a compelling reason to justify an exceptional sentence and imposed a sentence of 300 months.

## II. ANALYSIS

A. Instructional Error

Burrus says that the trial court erred by omitting the element of premeditation in its to-convict instruction for attempted first degree murder.[2] The

---

[1] "Huffing" refers to inhaling fumes to achieve a high.

[2] Though Burrus did not object on this ground below, "[t]he issue of omission of an element from that instruction is of sufficient constitutional magnitude to warrant

4

State responds that the court was not required to do so. We agree with the State.

"[W]e review the challenged instructions de novo in the context of the instructions as a whole." State v. Imokawa, 194 Wn.2d 391, 396, 450 P.3d 159 (2019).

"Jury instructions satisfy due process 'when, taken as a whole, they properly inform the jury of the applicable law, are not misleading, and permit the defendant to argue his theory of the case.'" State v. Orn, No. 98056-0, slip op. at 21–22 (Wash. Mar. 18, 2021) https://www.courts.wa.gov/opinions.pdf/980560.pdf (quoting State v. Tili, 139 Wn.2d 107, 126, 985 P.2d 365 (1999)); U.S. CONST. amend. XIV; CONST. art. I, § 3. A to-convict instruction must "'contain all of the elements of the crime because it serves as a 'yardstick' by which the jury measures the evidence to determine guilt or innocence.'" Orn, slip op. at 22 (quoting State v. Smith, 131 Wn.2d 258, 263, 930 P.2d 917 (1997)).

"The statutory crime of attempt 'contains two essential elements the State has to prove to secure a conviction: (1) intent to commit a specific crime and (2) any act constituting a substantial step toward the commission of that crime.'" Id. (quoting State v. Nelson, 191 Wn.2d 61, 71, 419 P.3d 410 (2018)). A to-convict instruction for an attempt crime "need not also set out the elements of the substantive crime attempted," those elements "may be contained in a separate,

---

review when raised for the first time on appeal." State v. Mills, 154 Wn.2d 1, 6, 109 P.3d 415 (2005); see RAP 2.5(a)(3).

definitional jury instruction." Id. (citing State v. DeRyke, 149 Wn.2d 906, 911, 73 P.3d 1000 (2003); State v. Nelson, 191 Wn.2d 61, 72, 419 P.3d 410 (2018)).

Our Supreme Court held in Orn that a to-convict instruction for attempted first degree murder need not include the element of premeditation. Id. at 22–24. In Orn, the trial court instructed the jury on attempted first degree murder based on WPIC 100.02. Id. at 23. The instruction provided

> To convict the defendant of the crime of attempted murder in the first degree . . . each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about August 2, 2016, the defendant did an act that was a substantial step toward the commission of murder in the first degree;
>
> (2) That the act was done with the intent to commit murder in the first degree; and
>
> (3) That the act occurred in the State of Washington.

Id. (alteration in original). A separate instruction defined first degree murder as follows: "A person commits the crime of murder in the first degree when, with a *premeditated* intent to cause the death of another person, he or she causes the death of such person." Id. (emphasis added). The court determined that the "to-convict instruction did not omit any essential element of the crime of attempt, and 'taken as a whole' the jury instructions 'properly inform[ed] the jury of the applicable law.'" Id. at 24 (quoting Tili, 139 Wn.2d at 126).

Here, the trial court gave this to-convict instruction to the jury:

> To convict the defendant of the crime of attempted murder in the first degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about November 7, 2017, the defendant did an act that was a substantial step toward the commission of murder in the first degree;

(2) That the act was done with the intent to commit murder in the first degree; and

(3) That the act occurred in the State of Washington.

As in Orn, this instruction is based on WPIC 100.02.  A separate instruction provided, "A person commits the crime of murder in the first degree when, with a *premeditated* intent to cause the death of another person, he or she causes the death of such person or of a third person."  (Emphasis added.)  And the trial court defined premeditation in another instruction.

The instructions given here are nearly identical to those given in Orn.  Our Supreme Court has held that a trial court does not err by giving such instructions. We conclude that the trial court did not err in omitting premeditation from the to-convict instruction for attempted first degree murder.

B. Exceptional Sentence

Burrus says that for several reasons, the trial court erred in imposing an exceptional sentence based on the jury's finding of deliberate cruelty.[3]  We disagree with his arguments.

Under the Sentencing Reform Act, generally, a court must impose a sentence within the standard range.  RCW 9.94A.505.  A court may impose a sentence outside the standard range if it finds "substantial and compelling reasons justifying an exceptional sentence."  RCW 9.94A.535.  The existence of an aggravating factor may support an exceptional sentence.  RCW 9.94A.535(3). Aside from limited exceptions, the facts supporting an aggravating factor must be

---

[3] Because we conclude that the trial court did not improperly instruct the jury, we do not address Burrus's contention that improper instruction resulted in an improper exceptional sentence.

found by a unanimous jury. RCW 9.94A.535; RCW 9.94A.537(3). One such aggravating factor is when "[t]he defendant's conduct during the commission of the current offense manifested deliberate cruelty to the victim." RCW 9.94A.535(3)(a).

The trial court instructed the jury that it must determine "[w]hether the defendant's conduct during the commission of the crime manifested deliberate cruelty to the victim." The instructions defined deliberate cruelty as "gratuitous violence or other conduct that inflicts physical, psychological, or emotional pain as an end in itself, and which goes beyond what is inherent in the elements of the crime." The jury returned a special verdict form finding that Burrus's conduct manifested deliberate cruelty. The trial court imposed an exceptional sentence based on the jury's finding.

1. Sufficiency of the evidence

Burrus says insufficient evidence supports the jury's finding of deliberate cruelty. He contends that because the State failed to provide comparative evidence of typical attempted first degree murders, the jury had insufficient evidence to determine whether the facts here were atypical. The State responds that it was not required to provide examples of typical attempted first degree murders and that the jury was able to use its common experience to determine whether Burrus's actions were deliberately cruel. We agree with the State.

The State must prove the facts supporting an aggravating factor to a jury beyond a reasonable doubt. RCW 9.94A.537(3). We review the sufficiency of the evidence for an aggravating factor in the same way as we review it for the

8

elements of a crime.  State v. Zigan, 166 Wn. App. 597, 601, 270 P.3d 625 (2012).  "Under this standard, we review the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the presence of the aggravating circumstances beyond a reasonable doubt."  Id. at 601–02.

Burrus cites State v. Suleiman, 158 Wn. 2d 280, 143 P.3d 795 (2006), to support his contention that the State is required to provide comparative evidence of typical attempted first degree murders.  But Suleiman is distinguishable.  The case concerns whether the defendant's stipulation of facts sufficed to waive the requirement that a jury find facts supporting an aggravating factor beyond a reasonable doubt.  Id. at 294.  The court held that the aggravating factors the sentencing court relied upon necessarily involved judicial fact finding, which ran afoul of Blakely's[4] requirement that a jury find those facts.  Id. at 294 n.5.  Burrus relies on this language in Suleiman: "a determination of whether this crime was far more egregious than the typical vehicular assault also necessarily requires a factual comparison."  Id.  But that language concerns whether the sentencing court exercised judicial fact finding, it does not create a requirement that the State must provide comparative evidence.  Burrus does not cite any case imposing such a requirement.  It is within a jury's capability, based on their common sense and common experience, to determine that dousing a person in gasoline, lighting them on fire, and then leaving them to burn is deliberately cruel. See State v. Boyle, 183 Wn. App. 1, 13, 335 P.3d 954 (2014) ("A juror properly

---

[4] Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 2533 (2004).

9

brings his or her opinions, insights, common sense, and everyday life experience into deliberations."). We conclude that the lack of comparative evidence does not mean that insufficient evidence supported the jury's finding of deliberate cruelty.

2. Vagueness

Burrus says the aggravating factor of deliberate cruelty is unconstitutionally vague. He contends that aggravating factors are elements of the charged crime and are thus subject to a vagueness challenge. The State responds that the vagueness doctrine does not apply to the deliberate cruelty aggravating factor, and even if it did, the factor is not unconstitutionally vague. We conclude that the vagueness doctrine does not apply to the aggravating factor of deliberate cruelty.

"We review the constitutionality of a statute de novo." State v. Eckblad, 152 Wn.2d 515, 518, 98 P.3d 1184 (2004). "Vagueness challenges 'are evaluated in light of the particular facts of each case,' unless the First Amendment is implicated." Id. (quoting City of Bremerton v. Spears, 134 Wn.2d 141, 159, 949 P.2d 347 (1998)).

Under the due process clauses of the Washington and United States constitutions, a legal prohibition is "'unconstitutionally vague if (1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement.'" State v. Wallmuller, 194 Wn.2d 234, 239, 449 P.3d 619 (2019) (quoting State v. Padilla, 190 Wn.2d 672, 677, 416 P.3d

712 (2018)); U.S. CONST. amend. XIV; CONST. art. I, § 3. "For purposes of the vagueness doctrine, our cases do not distinguish between state and federal protections." Wallmuller, 194 Wn.2d at 239.

### a. State v. Baldwin

Our Supreme Court held in State v. Baldwin, 150 Wn.2d 448, 459, 78 P.3d 1005 (2003), that the vagueness doctrine did not apply to the then-existing aggravating factors in the Sentencing Reform Act. Under former RCW 9.94A.120 (2000), the trial court was permitted to impose an exceptional sentence upon finding substantial and compelling reasons to do so. Id. at 458–59. Former RCW 9.94A.390[5] listed aggravating factors, including deliberate cruelty, that the trial court could use to justify an exceptional sentence, but it was not required that a jury find the facts underlying the factors. Id. at 459. The defendant challenged those provisions as unconstitutionally vague. Id. at 457.

The court determined that the vagueness doctrine focuses on two concerns: fair notice of proscribed conduct and preventing arbitrary application of the law. Id. at 458. The court said the doctrine "focus[es] on laws that prohibit or require conduct," and because the sentencing guidelines did not define conduct or allow for arbitrary application, the "due process considerations that underlie the void-for-vagueness doctrine have no application in the context of sentencing guidelines." Id. at 459.

---

[5] "The statutes' present equivalents lie in RCW 9.94A.535." State v. DeVore, 2 Wn. App. 2d 651, 661, 413 P.3d 58 (2018).

In reaching its holding, the court noted that the sentencing guidelines "do not inform the public of the penalties attached to a criminal conduct nor do they vary the statutory maximum and minimum penalties assigned to illegal conduct by the legislature." Id. The court also emphasized, "[f]undamental to both statutes being challenged is the notion that a court is free to exercise discretion in fashioning a sentence." Id. at 460. The court said, "[t]he guidelines are intended only to structure discretionary decisions affecting sentences; they do not specify that a particular sentence must be imposed. Since nothing in these guideline statutes requires a certain outcome, the statutes create no constitutionally protectable liberty interest." Id. at 461.

      b. Whether Baldwin controls

Burrus says that Blakely invalidates Baldwin's holding. In Blakely, the United States Supreme Court held that under the Sixth Amendment, the facts supporting an exceptional sentence beyond the standard range must be found by a jury. Id. at 296. The Court explained that a court may impose a sentence above the standard range only if a jury finding of an aggravating factor supports an exceptional sentence. Id. In light of Blakely, the legislature amended the Sentencing Reform Act to require that a jury find the underlying facts for an aggravating factor unless limited exceptions apply. See RCW 9.94A.535; RCW 9.94A.537(3). Thus, Burrus contends, the trial court's sentencing decision is no longer discretionary in the way that it was when the court decided Baldwin and its reasoning no longer applies.

Yet this court has rejected the contention that Baldwin no longer applies after Blakely. See State v. DeVore, 2 Wn. App. 2d 651, 665, 413 P.3d 58 (2018) ("we hold that challenges to the destructive impact factor and other aggravating factors under RCW 9.94A.535(3) do not merit review under the void for vagueness doctrine."); State v. Brush, 5 Wn. App. 2d 40, 63, 425 P.3d 545 (2018) ("We hold that Baldwin remains good law. Accordingly, we apply Baldwin and hold that Brush cannot assert a vagueness challenge to RCW 9.94A.535(3)(h)(i).").

Burrus says that Brush and DeVore incorrectly rely on a determination that a jury's finding of an aggravating factor does not alter the sentencing range. Burrus contends that because a jury's finding of an aggravator allows a court to impose an exceptional sentence up to the statutory maximum, rather than within the standard range, the existence of an aggravating factor does alter the sentencing range. Burrus recognizes that the aggravating factors here do not change the minimum sentence but says that the increase in the allowable sentence length renders the reasoning in Brush and DeVore flawed.

We disagree. As this court noted in Brush, "the aggravating factors in RCW 9.94A.535(3) do not fix sentences or the ranges of sentences for any crime and do not vary any statutory minimum or maximum sentence." 5 Wn. App. 2d at 61; see also DeVore, 2 Wn. App. 2d at 665 ("The trial court must still sentence the defendant within the statutory maximum of the crime"). A jury's finding of deliberate cruelty does "not specify that a particular sentence must be imposed" or "require[ ] a certain outcome." Baldwin, 150 Wn.2d at 461. "RCW 9.94A.535

13

still provides the trial court with discretionary authority to impose or not to impose an exceptional sentence even when the jury finds an aggravating factor." Brush, 5 Wn. App. 2d at 62.

Burrus also says that the two United States Supreme Court cases that DeVore and Brush cite—Johnson v. United States, 576 U.S. 591, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015) and Beckles v. United States, 137 S. Ct. 886, 197 L. Ed. 2d 145 (2017)—support his position.

In Johnson, the Court applied the vagueness doctrine to a provision of the Armed Career Criminal Act, which increased the applicable sentence from a maximum of 10 years to a minimum of 15 years. 576 U.S. at 593, 596. The Court stated that the vagueness doctrine applies "not only to statutes defining elements of crimes, but also to statutes fixing sentences." Id. at 596.

In Beckles, the Court held that a provision containing almost identical language to the provision at issue in Johnson was not subject to the vagueness doctrine specifically because the provision was an advisory sentencing guideline. 137 S. Ct. at 892. The Court noted "the advisory Guidelines do not fix the permissible range of sentences. To the contrary, they merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." Id. The Court also said that the guidelines "advise sentencing courts how to exercise their discretion within the bounds established by Congress." Id. at 895.

Burrus contends that the aggravating factors in this case are distinguishable from the advisory guidelines in Beckles and therefore are subject

14

to the vagueness doctrine.  Burrus emphasizes that, unlike in <u>Beckles</u>, the "existence of an aggravator is necessary to impose" an exceptional sentence.  But Burrus confuses a necessary factor with a sufficient once.  Though the jury's finding of deliberate cruelty increases the permissible sentence to the statutory maximum, it does not require an exceptional sentence.  As in <u>Beckles</u>, the trial court is still free to exercise its discretion in determining the appropriate sentence.

Burrus also says that because <u>Beckles</u> holds that the vagueness doctrine applies to laws that permit a jury to "prescribe the sentences or sentencing range available," it applies to aggravating factors.  <u>Id.</u> at 894–95.  Burrus contends that RCW 9.94A.535 is a law permitting the jury to prescribe the sentencing range because it allows the trial court to impose a sentence up to the statutory maximum.  But as discussed above, the jury's finding of deliberate cruelty permits but does not require a sentence up to the statutory maximum, which remains unchanged.

In light of the foregoing, we conclude that <u>Baldwin</u> controls here.  The trial court's sentencing decision remains discretionary despite <u>Blakely</u>'s requirement that a jury find the facts supporting the aggravating factors.  Because the jury's finding of deliberate cruelty does not change the statutory minimum or maximum sentence, and does not require a specific sentence, it does not affect a person's ability to know the penalty for certain conduct.  <u>See</u> <u>Baldwin</u>, 150 Wn.2d at 459 (noting that the former aggravating factors do not "inform the public of the penalties attached to a criminal conduct nor do they vary the statutory maximum

15

and minimum penalties assigned to illegal conduct by the legislature.").  We conclude that the vagueness doctrine does not apply to the aggravating factor of deliberate cruelty.[6]

We affirm.

_Chun, J._

WE CONCUR:

_Coburn, J._          _Andrus, A.C.J._

---

[6] Burrus also relies on State v. Allen to say that because aggravating factors are considered elements of a crime, they should be subject to the vagueness doctrine.  192 Wn.2d 526, 544, 431 P.3d 117 (2018) ("The aggravating circumstances therefore no longer meet the definition of "sentencing factors" for Sixth Amendment purposes.  They are elements.").  But the Allen court determined that aggravating circumstances in a different statutory provision from RCW 9.94A.535, which increased the minimum sentence, were elements for purposes of the double jeopardy analysis.  Id. at 533, 544. Allen does not address the vagueness doctrine or the RCW 9.94A.535 aggravators.