[No. 33265-1-I.    Division One.    August 11, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. BRUCE D. MULLIGAN, *Appellant*.

*Richard R. Tassano* and *David L. Donnan* of *Washington Appellate Project;* and *Suzanne Lee Elliott,* for appellant.

*Davis S. McEachran, Prosecuting Attorney,* and *Laura D. Hayes, Deputy,* for respondent.

KENNEDY, J. — Bruce Mulligan appeals his conviction of one count of first degree murder, contending, inter alia, that the trial court erred in basing the imposition of his exceptional sentence on the impact of the crime on the victim's young children. Although we affirm Mulligan's conviction, we agree that the impact of the murder on the victim's children, who were not present at the time of the crime, was not a legally sufficient basis for the imposition of the exceptional sentence. We thus reverse Mulligan's exceptional sentence and remand for the imposition of a standard range sentence.[1]

## FACTS

On January 1, 1992, Bruce Mulligan and his wife Kimberly went elk hunting in the woods of rural Whatcom County, where Kimberly died from a single gunshot wound to the chest. During the ensuing three months, police

---

[1]Mulligan's additional assignments of error are treated in the unpublished portion of this opinion.

actively investigated; on March 6, 1992, the State charged Mulligan with one count of first degree murder. The first trial, presided over by Judge Moynihan, commenced on January 19, 1993, and, after five weeks, ended in a mistrial when the jury was unable to reach a verdict. The second trial, presided over by Judge Swedberg, commenced on May 10, 1993; after eight weeks of trial, Mulligan was found guilty as charged.

The standard range sentence was 240 to 320 months. The State requested an exceptional sentence of 640 months relying, in part, on the aggravating factor of the impact of Kimberly's murder on her two young children. The record reflects that the two children, who were five and nine years of age, respectively, at the time of their mother's death, were separated and placed with new families residing in different towns, after Mulligan was arrested. Kimberly's son resides in a foster home while her daughter lives with relatives. Kimberly had been the children's primary caretaker. The trial judge agreed that the impact of the crime on Kimberly's children was substantial and compelling. He thus imposed an exceptional sentence of 420 months, concluding:

1. The Defendant's actions have deprived the children of their mother and have had a profound and permanent impact on them.

2. The Defendant's actions have also deprived the children of his company and support as their father.

3. The impact that the killing of Kimberly Mulligan would have on her children was foreseeable to the Defendant before he killed her.

4. The impact on the children is of such a distinctive nature that it is not normally associated with the commission of murder in the first degree.

5. The impact that the Defendant's actions have had on the children is an Aggravating Factor justifying an exceptional sentence under the Sentencing Reform Act of 1981, RCW 9.94A, et. seq.

This timely appeal followed.

## DISCUSSION

Mulligan contends that the trial court erred in basing the imposition of the exceptional sentence on the impact of the crime on Kimberly's young children. He argues that the impact on the children does not distinguish this murder from others in the same category, and it is thus not the type of aggravating factor that justifies a sentence outside the standard range.

The Sentencing Reform Act of 1981 (SRA) created presumptive sentencing ranges for most felonies based on the seriousness of the crime and the defendant's criminal history. RCW 9.94A.320-.360; *State v. Oxborrow*, 106 Wn.2d 525, 529, 723 P.2d 1123 (1986). A sentencing court may impose an exceptional sentence outside the standard range if it finds "that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.120(2). *See also State v. Grewe*, 117 Wn.2d 211, 214, 813 P.2d 1238 (1991). RCW 9.94A.390 provides a nonexclusive list of aggravating factors which the court may consider in imposing an exceptional sentence. Upon appeal of an exceptional sentence, a reviewing court must reverse the sentence if it finds:

> (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

RCW 9.94A.210(4). *See also State v. Scott*, 72 Wn. App. 207, 213, 866 P.2d 1258 (1993), *aff'd*, 126 Wn.2d 388 (1995); *State v. Ross*, 71 Wn. App. 556, 561-62, 861 P.2d 473 (1993), 883 P.2d 329 (1994).

In this case, Mulligan challenges the legal sufficiency of the aggravating factor relied upon by the trial court. An aggravating factor is legally sufficient to justify

the imposition of an exceptional sentence as long as the factor was not necessarily considered by the Legislature in establishing the standard range, and as long as the factor is " 'sufficiently substantial and compelling to distinguish the crime in question from others in the same category.' " *Scott*, 72 Wn. App. at 214-15 (quoting *Grewe*, 117 Wn.2d at 216). Here, contrary to Mulligan's argument that "there was no specific showing of trauma to either Mulligan child," there is ample evidence in the record of the devastating disruption suffered by the children as a consequence of the murder of their mother. They lost not only the companionship of their mother and father, but of each other, as well. Following Mulligan's arrest, the children, who were nine and five at the time of their mother's death, were separated and placed with new families. Kimberly's son resides in a foster home while her daughter lives with relatives. Even Mulligan's trial counsel candidly admitted that "there definitely was an impact" on the children as a result of Kimberly's death.

We also perceive that the murder of one parent by the other parent may be even more traumatic to a young child than would be the murder of a parent by a stranger or an acquaintance. Psychiatrists have studied children who have lost one parent at the hands of the other, and have made the following observations:

> Many of the children had suffered multiple losses; they had lost not only their mother, but their father, other relations, home[,] possessions, school, friends and community. They had to live with their shame at [sic] being the children of a killer, and with their guilt of not being able to prevent the killing.
>
> . . . .
>
> Traumatized and bereaved, they then have to adjust to life with a new family who may be strangers to them, or if related, not well known. Relatives themselves might be grief stricken or ashamed of the part their kin played in the death and therefore not fully available to the children to care for them in their need. They may be parted from their brothers and sisters, blamed for the tragedy, and certainly have to

cope with the curiosity of their peers as well as the adjustment to [a] new school and neighborhood.

DORA BLACK ET AL., WHERE FATHER KILLS MOTHER: HELPING CHILDREN MOVE FROM TRAUMA TO GRIEF (1993). Sadly, it is reasonable to infer that the experiences of the Mulligan children mirror many if not most of the psychiatrists' observations.

■ ■ Despite the devastating impact suffered by the children in this case, to affirm this exceptional sentence would be effectively to create a rule that an exceptional sentence is justified any time one parent of minor children murders the other parent. Such a rule must come from the Legislature, not from the courts. Unfortunately, cases of spousal homicide are not rare; we cannot say as a matter of law that the Legislature did not consider cases of one parent of minor children killing the other parent when setting the standard range for first degree murder. As our Supreme Court has recognized:

> Determination of crimes and punishment has traditionally been a legislative prerogative, subject to only very limited review in the courts. A belief on the part of the judiciary that sentencing possibilities are inadequate goes to the wisdom of the dispositional standards and cannot be enough to overcome the legislatively prescribed range of punishment.

*State v. Freitag*, 127 Wn.2d 141, 144-45, 896 P.2d 1254 (1995) (quoting *State v. Bryan*, 93 Wn.2d 177, 181, 606 P.2d 1228 (1980)). *See also State v. Manussier*, 129 Wn.2d 652, 667-68, 921 P.2d 473 (1996), *cert. denied*, 117 S. Ct. 1563 (1997).

Moreover, virtually every murder is devastating to the family of the victim. Many members of such families, adults and minor children alike, may suffer from irrational feelings of guilt at not, somehow, having prevented the murder; such is the human condition—a fact presumably considered by the Legislature in setting the standard range for first degree murder.

Impact to third parties, particularly children, does, in

some instances, justify an exceptional sentence. *See, e.g., State v. Cuevas-Diaz*, 61 Wn. App. 902, 905-07, 812 P.2d 883 (1991); *State v. Barnes*, 58 Wn. App. 465, 475, 794 P.2d 52 (1990), *aff'd in part, rev'd in part on other grounds*, 117 Wn.2d 701 (1991). But the better reasoned cases allowing for exceptional sentences based on third-party impact take into consideration the fact that the third parties were forced to witness the actual criminal act, *e.g., State v. Johnson*, 124 Wn.2d 57, 75-76, 873 P.2d 514 (1994) as well as the increased culpability of the defendant, who knew or should have known of the presence of third parties and the probable extraordinary impact they would suffer, *e.g., Cuevas-Diaz*, 61 Wn. App. at 905-07; *Barnes*, 58 Wn. App. at 475.

Mulligan did not force the children to witness the murder of their mother. Although the devastating impact of this crime certainly was foreseeable by Mulligan, the devastating impact of all such crimes was equally foreseeable by the Legislature when it set the standard range for first degree murder. Accordingly, we are constrained to conclude that the sentencing court erred in basing Mulligan's exceptional sentence on the impact of the crime on Kimberly's young children. We thus reverse the exceptional sentence and remand for the imposition of a standard range sentence.

A majority of the panel having determined that the remainder of this opinion lacks precedential value and will not be printed in the Washington Appellate Reports but will be filed for public record in accord with RCW 2.06.040, it is so ordered.

BAKER, C.J., and BECKER, J., concur.

Review denied at 134 Wn.2d 1016 (1998).