**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
FEBRUARY 17, 2022

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
FEBRUARY 17, 2022

ERIN L. LENNON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Petitioner, | ) | No. 99581-8 |
| | ) | |
| v. | ) | |
| | ) | En Banc |
| CHARMARKE ABDI-ISSA, | ) | |
| | ) | |
| Respondent. | ) | Filed : February 17, 2022 |
| | ) | |

GONZÁLEZ, C.J. — Under Washington law, some crimes may be designated crimes of domestic violence. A domestic violence designation makes additional protections available for victims. Ch. 10.99 RCW. We are asked whether the trial court correctly concluded that animal cruelty may be such a crime. We are also asked whether the trial court properly instructed the jury that it could find this crime had a destructive and foreseeable impact on persons other than the victim. We affirm the trial court on both issues.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

BACKGROUND

Julie Fairbanks began dating Charmarke Abdi-Issa shortly after she moved to Seattle with her dog, Mona.[1] Mona was a small Chihuahua and Dachshund mix. Fairbanks testified she was close to Mona. Abdi-Issa, however, had a history of disliking Mona. Abdi-Issa was abusive toward Fairbanks and Mona, even threatening to kill them both.

One evening, while they were out in Seattle's International District, Abdi-Issa insisted Fairbanks let him take Mona on a walk. Fairbanks objected, but Abdi-Issa ignored her and left with Mona. Fairbanks felt powerless, claiming, "[I]t didn't matter[; if] he wanted to [take her on a walk,] he was going to do it either way." 12 Verbatim Report of Proceedings (May 13, 2019) (VRP) at 1054-55.

Not long after he left, Abdi-Issa called Fairbanks claiming that Mona had gotten out of her harness and that he could not find her. Fairbanks did not believe him, as Mona had never gotten out of her harness before. Abdi-Issa refused to tell her more. Fairbanks began to panic after she heard Mona yelping over the phone.

Around that same time, Melissa Ludin and William Moe heard a sound of great distress. They followed the sound and saw Abdi-Issa beating and making "brutal stabbing" motions toward Mona. *Id*. at 1123. They saw Abdi-Issa kick

---

[1] Mona is short for Monica. Both were used interchangeably throughout the trial proceedings. For consistency, we use the name Mona.

2

Mona so hard that she went up into the air and "flew into the bushes." *Id*. at 1088.

Each time Mona was struck she made a "screeching[,] screaming[,] pained[,] awful

sound" that was at last followed by silence. *Id.* at 1124-25.

While Ludin called the police, Moe yelled at Abdi-Issa to stop hitting Mona.

Abdi-Issa turned toward Moe and yelled, "[D]o you want to get some?" *Id*. at

1091. When Moe once again told Abdi-Issa to stop, Abdi-Issa walked away.

Seattle Police Officers Young Lim and Kyle Corcoran responded to Ludin's

call. While Lim talked to Abdi-Issa, Corcoran went to find Mona. With Ludin's

help, Corcoran found Mona, still alive, underneath a bush. Officers transported

Mona to an emergency veterinary clinic.

Ludin testified she was very upset by the incident. When the police arrived

Ludin was in distress, "[h]yperventilating and having a panic attack." *Id*. at 1132.

Ludin cried as she explained to the officers what she saw and where she had last

seen Mona. Ludin suffered a severe panic attack that night and continued to

experience flashbacks in the following week.

Meanwhile, Fairbanks was frantically searching for Mona. During her

search, she ran into Lim and Corcoran, who realized that Fairbanks was Mona's

owner. The officers directed Fairbanks to the veterinary clinic.

Mona arrived at the clinic nearly comatose, with severe swelling in her

brain, bruising on her chest, and a wound to the top of her head. By the time

Fairbanks arrived at the veterinary clinic Mona had died. A necropsy found that

Mona had died from multiple instances of blunt force trauma.

The State charged Abdi-Issa with first degree animal cruelty under RCW

16.52.205 and sought a domestic violence designation under RCW 10.99.020 and

RCW 9A.36.041(4). The State also charged two sentencing aggravators: (1) that

the crime had a destructive and foreseeable impact on persons other than the victim

under RCW 9.94A.535(3)(r) and (2) that Abdi-Issa's conduct during the crime of

domestic violence manifested deliberate cruelty or intimidation of the victim,

RCW 9.94A.635(3)(h)(iii). Abdi-Issa unsuccessfully moved to dismiss the

domestic violence designation and aggravators multiple times.

The jury found Abdi-Issa guilty of animal cruelty. The jury also found that

Abdi-Issa and Fairbanks were in a domestic relationship prior to the crime, which

allowed for a domestic violence designation. The jury returned mixed verdicts on

the sentencing aggravators, finding that the crime involved a destructive and

foreseeable impact on persons other than the victim, but they did not find that it

manifested deliberate cruelty or intimidation of the victim.

The court imposed the maximum 12-month sentence for the crime of animal

cruelty, and an additional 6 months for the aggravator, sentencing Abdi-Issa to an

18-month exceptional sentence. Based on the domestic violence designation, the

*State v. Abdi-Issa*, No. 99581-8

court also imposed a no-contact order prohibiting Abdi-Issa from having contact with Fairbanks.

The Court of Appeals vacated the domestic violence designation, the no-contact order, and the impact on others sentencing aggravator. *State v. Abdi-Issa*, No. 80024-8-I (Wash. Ct. App. Feb. 16, 2021) (unpublished), http://www.courts.wa.gov/opinions/pdf/800248.pdf. We granted review. 197 Wn.2d 1016.

ANALYSIS

The questions before us are questions of statutory interpretation that we review de novo. *See State v. Bunker*, 169 Wn.2d 571, 577-78, 238 P.3d 487 (2010) (citing *City of Spokane v. Spokane County*, 158 Wn.2d 661, 672-73, 146 P.3d 893 (2006)). When interpreting statutes, our goal is to determine and carry out the intent of the legislature. *State v. Alvarado*, 164 Wn.2d 556, 561-62, 192 P.3d 345 (2008) (citing *City of Spokane*, 158 Wn.2d at 673). Statutory interpretation begins with an examination of the statute's plain language. *See State v. James-Buhl*, 190 Wn.2d 470, 474, 415 P.3d 234 (2018) (citing *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526-27, 243 P.3d 1283 (2010)). "In discerning the plain meaning of a provision, we consider the entire statute in which the provision is found, as well as related statutes or other provisions in the same act that disclose legislative intent." *Alvarado*, 164 Wn.2d at 562 (citing *City of Spokane*, 158 Wn.2d

5

*State v. Abdi-Issa*, No. 99581-8

at 673). If the words of a statute are clear, we end our inquiry. *State v. Gonzalez*, 168 Wn.2d 256, 263, 226 P.3d 131 (2010) (citing *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). If not, we may consult other tools of statutory construction, such as legislative history. *State v. Evans*, 177 Wn.2d 186, 193, 298 P.3d 724 (2013) (citing *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010)).

### 1. Animal Cruelty as a Crime of Domestic Violence

First, we must decide whether animal cruelty may be designated a crime of domestic violence. We conclude that it may. The Washington legislature passed the domestic violence act "to recognize the importance of domestic violence as a serious crime against society and to assure the victim of domestic violence the maximum protection from abuse which the law and those who enforce the law can provide." RCW 10.99.010. The domestic violence act allows certain crimes committed against an intimate partner to receive a domestic violence designation. RCW 10.99.020(4)(b). Cases with domestic violence designations are given priority scheduling and courts may issue pretrial no-contact orders. *State v. Hagler*, 150 Wn. App. 196, 201, 208 P.3d 32 (2009).[2] At sentencing, courts may also "impose specialized no-contact orders, violation of which constitutes a

---

[2] Initially, a domestic violence designation did not have to be proved to a jury. *Hagler*, 150 Wn. App. at 201. The legislature has since amended the law to allow juries to make that decision at trial. LAWS OF 2010, ch. 274, § 402(3).

6

separate crime." *State v. O'Connor*, 119 Wn. App. 530, 547, 81 P.3d 161 (2003),

*aff'd in part and set aside in part*, 155 Wn.2d 335, 119 P.3d 806 (2005).

The domestic violence act does not create new crimes, it simply emphasizes

the need to enforce existing criminal statutes in such a way that victims of

domestic violence are protected. *State v. Goodman*, 108 Wn. App. 355, 359, 30

P.3d 516 (2001) (where arson was deemed a crime of domestic violence when the

purpose of the arson was to harm the property of Goodman's partner). Designating

a crime as one of domestic violence "'does not itself alter the elements of the

underlying offense[,] rather, it signals [to] the court that the law is to be equitably

and vigorously enforced.'" *Id*. (quoting *State v. O.P.*, 103 Wn. App. 889, 892, 13

P.3d 1111 (2000)). Further, a domestic violence designation itself does not

increase a defendant's punishment. *State v. Spencer*, 128 Wn. App. 132, 144, 114

P.3d 1222 (2005) (citing *State v. Felix*, 125 Wn. App. 575, 576-77, 105 P.3d 427

(2005)).

To determine what crimes are eligible for a domestic violence designation,

we first look to the domestic violence statute. The relevant portion reads:

> "Domestic violence" *includes but is not limited to* any of the following
> crimes when committed either by (a) one family or household member
> against another family or household member,[3] or (b) one intimate partner
> against another intimate partner:

---

[3] The definition of domestic violence was amended in 2019 to add "one intimate partner against another intimate partner." LAWS OF 2019, ch. 263, § 203(5). However, an adult dating

*State v. Abdi-Issa*, No. 99581-8

> (i) Assault in the first degree (RCW 9A.36.011);
> (ii) Assault in the second degree (RCW 9A.36.021);
> (iii) Assault in the third degree (RCW 9A.36.031);
> (iv) Assault in the fourth degree (RCW 9A.36.041);
> (v) Drive-by shooting (RCW 9A.36.045);
> (vi) Reckless endangerment (RCW 9A.36.050);
> (vii) Coercion (RCW 9A.36.070);
> (viii) Burglary in the first degree (RCW 9A.52.020);
> (ix) Burglary in the second degree (RCW 9A.52.030);
> (x) Criminal trespass in the first degree (RCW 9A.52.070);
> (xi) Criminal trespass in the second degree (RCW 9A.52.080);
> (xii) Malicious mischief in the first degree (RCW 9A.48.070);
> (xiii) Malicious mischief in the second degree (RCW 9A.48.080);
> (xiv) Malicious mischief in the third degree (RCW 9A.48.090);
> (xv) Kidnapping in the first degree (RCW 9A.40.020);
> (xvi) Kidnapping in the second degree (RCW 9A.40.030);
> (xvii) Unlawful imprisonment (RCW 9A.40.040).

RCW 10.99.020(4) (emphasis added). Abdi-Issa is correct that animal cruelty is

not listed in RCW 10.99.020. But the list of crimes is explicitly nonexclusive.

Animal cruelty is sufficiently similar to the enumerated crimes that the trial court

did not err in asking the jury whether, under these facts, it was a crime of domestic

violence.

Abdi-Issa argues that animal cruelty is not sufficiently similar to the types of

crimes listed in RCW 10.99.020 to be designated a crime of domestic violence

because it does not involve a human victim. But many of the enumerated crimes,

including burglary and malicious mischief, are against a victim's property. RCW

---

relationship like the one between Fairbanks and Abdi-Issa was included in the definition of
family or household member prior to the amendment. LAWS OF 2019, ch. 46, § 5014(5).

*State v. Abdi-Issa*, No. 99581-8

10.99.020(4)(ix), (xii)-(xiv). Pets, as a matter of law, are considered personal property. *Sherman v. Kissinger*, 146 Wn. App. 855, 870, 195 P.3d 539 (2008) (citing *Mansour v. King County*, 131 Wn. App. 255, 267, 128 P.3d 1241 (2006)). Here, Fairbanks was directly harmed as a result of Abdi-Issa's violent killing of her beloved pet and companion. She is plainly a victim of Abdi-Issa's crime.

Abdi-Issa contends that the prosecutors erred in charging animal cruelty instead of malicious mischief, where ownership is a clear element of the crime. Suppl. Br. of Resp't at 12; *see also* RCW 9A.48.070. But nothing required the prosecution to charge the lesser crime of malicious mischief.

Abdi-Issa also asserts that as a matter of law, animal cruelty is not a domestic violence offense because the victim of that offense is an animal, not a person. Suppl. Br. of Resp't at 14. Abdi-Issa starts with the definition of family or household members, which includes "'persons sixteen years of age or older with whom a person sixteen years of age or older has or has had a dating relationship.'" *Id*. (quoting former RCW 10.99.020(3) (2004)). He notes that chapter 10.99 RCW states that a victim of domestic violence is "a family or household member who has been subjected to domestic violence." *Id*. at 15 (citing former RCW 10.99.020(8)). Abdi-Issa then concludes that the victim of domestic violence, for the purposes of RCW 10.99.020(4), is the victim of *a crime* of domestic violence

9

*State v. Abdi-Issa*, No. 99581-8

and as a result, the offense of animal cruelty is not a crime of domestic violence.

*Id*.

This highly technical reading of the statutes ignores the plain language of the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, and RCW 10.99.020(4). The general definition of "victim" under the SRA is "any person who has sustained emotional, psychological, physical, or financial injury to person or property as a direct result of the crime charged." RCW 9.94A.030(54). The definition of "victim" under the SRA includes Fairbanks because she sustained an injury as a direct result of the crime charged.

This conclusion is consistent with the SRA's definition of a victim of domestic violence:

> [A]n intimate partner or household member who has been subjected to the infliction of physical harm or sexual and psychological abuse by an intimate partner or household member as part of a pattern of assaultive, coercive, and controlling behaviors directed at achieving compliance from or control over that intimate partner or household member. Domestic violence includes, but is not limited to, the offenses listed in RCW 10.99.020 and *** 26.50.010 committed by an intimate partner or household member against a victim who is an intimate partner or household member.

RCW 9.94A.030(55). Fairbanks' testimony suggests psychological abuse, which was a part of a larger pattern of assaultive, coercive, and controlling behavior, occurred. The SRA's broad definition of victim applies to any crime sentenced under the SRA, including animal cruelty. Fairbanks is a victim under the

10

*State v. Abdi-Issa*, No. 99581-8

definitions set forth by the legislature.  Under the plain language of RCW

10.99.020(4) and related statutes, animal cruelty may be designated a crime of

domestic violence.

This conclusion is consistent with the legislature's categorization of

domestic violence as a serious crime against society and its intent to ensure that

victims have the maximum protection from abuse that the law can provide.  *See*

RCW 10.99.010.  In 2009, the legislature recognized that "considerable research

shows a strong correlation between animal abuse, child abuse, and domestic

violence."  LAWS OF 2009, ch. 439, § 1.  "The legislature intends that perpetrators

of domestic violence not be allowed to further terrorize and manipulate their

victims, or the children of their victims, by using the threat of violence toward

pets." *Id*.  This shows that our legislature recognized the relationship between

animal abuse and domestic violence.

This recognition is amply supported by research into domestic violence.

Animal abuse is an indicator of domestic abuse in a relationship.  Benita J. Walton-

Moss et al., *Risk Factors for Interpersonal Violence and Associated Injury among*

*Urban Women*, 30 J. OF CMTY. HEALTH 377 (2005).  Further, 50 percent of

children living in homes with domestic violence report that the abuser threatened

to harm or kill a pet, a mechanism domestic violence perpetrators use to maintain

control over their victims.  Shelby Elaine McDonald et al., *Children's Experiences*

11

*State v. Abdi-Issa*, No. 99581-8

*of Companion Animal Maltreatment in Households Characterized by Intimate Partner Violence,* 50 CHILD ABUSE & NEGLECT 1 (2015).

Accordingly, we hold that the jury was properly instructed that it could find animal abuse was a crime of domestic violence. Thus, the trial court had the authority to enter a postconviction no-contact order under RCW 10.99.050.

### 2. Sentencing Aggravator—Impact on Others

Under the SRA, a trial court must impose a sentence within the standard range for the offense unless the court finds substantial and compelling reasons justifying an exceptional sentence. RCW 9.94A.535. Trial courts may impose an exceptional sentence if the offense involves a "'destructive and foreseeable impact on persons other than the victim.'" *State v. Chanthabouly*, 164 Wn. App 104, 143, 262 P.3d 144 (2011) (quoting RCW 9.94A.535(3)(r)). This is an aggravating circumstance that the State must prove to the jury beyond a reasonable doubt. *Id*. (citing former RCW 9.94A.535(3) (2005)); s*ee also* LAWS OF 2005, ch. 68, § 4.

This aggravator was added to the SRA in 2005 to comply with the ruling in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). *See* LAWS OF 2005, ch. 68, §§ 1, 3.[4] The legislature intended "to create a new criminal procedure for imposing greater punishment than the standard range . . .

---

[4] In *Blakely*, the United States Supreme Court held that criminal defendants have a right to have a jury determine beyond a reasonable doubt any aggravating fact that is used to impose greater punishment than the standard range sets out. 542 U.S. at 313.

*State v. Abdi-Issa*, No. 99581-8

and to codify existing common law aggravating factors." *Id*. § 1. This was an attempt by the legislature to restore judicial discretion in sentencing.

Here, the jury found that "[t]he offense involved a destructive and foreseeable impact *on persons other than the victim*" and that, therefore, the impact on others sentencing aggravator applied. RCW 9.94A.535(3)(r) (emphasis added). Abdi-Issa argues that because the victim of animal cruelty was Mona, an animal, not a person, the aggravator did not apply. But, as explained above, Fairbanks is also a victim of the animal cruelty charge. This makes the aggravator applicable because Ludin, who witnessed Abdi-Issa beating Mona, was a person other than the victim who was impacted by this crime. Ludin made the 911 call and was very distressed when the police arrived. Ludin testified that she had a severe panic attack that night, sitting in her car for a long time before she was calm enough to drive herself home. She continued to have flashbacks, had trouble sleeping, and would go into a state of panic whenever she heard a "high pitch[ed,] squeaky sound." 12 VRP at 1134. Abdi-Issa's act had a destructive and foreseeable impact on Ludin. Abdi-Issa's actions impacted someone other than Fairbanks. This emotional and psychological trauma will be something that Ludin and Fairbanks continue to carry. The sentencing aggravator was properly applied in this case.

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Abdi-Issa*, No. 99581-8

CONCLUSION

We hold that under these facts, animal cruelty can be designated a crime of domestic violence and that the jury was properly instructed that it could find the impact on others sentencing aggravator. Accordingly, we reverse the Court of Appeals and remand for any further proceedings necessary consistent with this opinion.

_____
González, C.J.

WE CONCUR:

_____
Johnson, J.

_____
Gordon McCloud, J.

_____

_____
Yu, J.

_____
Owens, J.

_____
Montoya-Lewis, J.

_____

_____
Whitener, J.

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Abdi-Issa*, No. 99581-8
(Stephens, J., concurring in part, dissenting in part)

No. 99581-8

STEPHENS, J. (concurring in part, dissenting in part)—The majority

concludes that animal cruelty in the first degree, RCW 16.52.205, may be designated

a crime of domestic violence, RCW 10.99.020(4), and that Julie Fairbanks may be

properly considered a victim of domestic violence in this case under the definitions

of "victim" set forth in RCW 9.94A.030(54), (55). I agree and concur in that portion

of the majority's opinion.

I write separately to express my disagreement with the majority's all too brief

analysis of whether an exceptional sentence was warranted in this case because

Charmarke Abdi-Issa's crime had a "destructive and foreseeable impact on persons

other than the victim." RCW 9.94A.535(3)(r). The majority concludes that because

witness, Melissa Ludin, was negatively impacted by Abdi-Issa's abuse of

Fairbanks's dog, Mona, the jury properly found this aggravating factor beyond a

reasonable doubt.

1

*State v. Abdi-Issa*, No. 99581-8
(Stephens, J., concurring in part, dissenting in part)

The majority's ready endorsement of the application of this aggravator, however, disregards the limiting principles articulated by precedent. Violent crimes committed in public places always carry the possibility of trauma to those who witness disturbing events. For this reason, the cases interpreting such impact aggravators have explicitly rejected a broad interpretation that would permit exceptional sentences merely because a crime is committed in public. But here, as argued by the State at trial and on appeal, the finding of a "destructive and foreseeable impact" was based on the mere fact that the crime was committed in public and Ms. Ludin became significantly distressed. Mr. Abdi-Issa's sentence increased by 50 percent as a result. The majority's conclusion that this was sufficient risks transforming what was designed to be a narrow basis for an exceptional sentence into a new and powerful charging tool that will weigh heavily in plea negotiations and lead to sentencing disparities. Because I believe this dramatic expansion of the impact aggravator is unjustified, I respectfully dissent in part.

ANALYSIS

Even before the statutory aggravating factor for "destructive and foreseeable impact on others" was added to the Sentencing Reform Act of 1981, ch. 9.94A RCW, in 2005, courts utilized the impact of a crime on nonvictims as a basis for an exceptional sentence. *State v. Chanthabouly*, 164 Wn. App. 104, 143, 262 P.3d 144

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

(2011) (collecting cases). Courts in those pre-*Blakely*[1] cases required "'that defendant's actions impact others in a distinctive manner not usually associated with the commission of the offense in question, and that this impact be foreseeable to the defendant.'" *Id.* (quoting *State v. Way*, 88 Wn. App. 830, 834, 946 P.2d 1209 (1997)); *see also State v. Cuevas-Diaz*, 61 Wn. App. 902, 906, 812 P.2d 883 (1991). In other words, the destructive and foreseeable impact warranting an exceptional sentence must not be inherent in the crime itself and therefore must not have been "necessarily considered by the Legislature in establishing the standard sentence range." *State v. Grewe*, 117 Wn.2d 211, 215-16, 813 P.2d 1238 (1991); *State v. Mulligan*, 87 Wn. App. 261, 265, 941 P.2d 694 (1997).

The majority's application of the aggravator in this case contains little of this analysis. Instead, focusing solely on whether Ludin experienced trauma by witnessing Abdi-Issa's crime, the majority opens the door to applying this aggravating factor any time a crime in public has a negative impact on a nonvictim. In fact, this is precisely how the State argued the application of this aggravating factor at trial. The jury received no instruction on who the "person[] other than the victim" impacted by Abdi-Issa's crime was. Clerk's Papers at 147 (quoting RCW 9.94A.535(3)(r)). And rather than focusing on how any specific nonvictim was

---

[1] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

foreseeably impacted by this crime, the State in closing specifically argued that the aggravator applied because Abdi-Issa committed his crime in a *public place*. *See, e.g.*, 13 Verbatim Report of Proceedings (May 14, 2019) at 1262 ("He didn't kill Mona in an alleyway or inside a home. [H]e killed her in a public parking lot. He punched and kicked and beat her to death in a place where anyone walking by could see."), 1263 ("This is a public area, and it was absolutely foreseeable to him that someone might see him."). The State repeated this argument in its Court of Appeals brief, arguing that "application of the destructive and foreseeable impact aggravator was entirely appropriate for an adult who was impacted by a crime committed in a public setting. Abdi-Issa chose to commit animal cruelty in a public parking lot at a time when people were in the area." Br. of Resp't at 34 (Wash. Ct. App. No. 80024-8-I (2020)).

But this argument, which the majority accepts, has been explicitly rejected by cases defining when this aggravator should apply. For example, in *Way*, the defendant shot and killed his wife on a community college campus in front of adult students, and the Court of Appeals reversed an exceptional sentence despite acknowledging negative impacts on those student witnesses. 88 Wn. App. at 832. *Way* reasoned that the mere fact that the students witnessed the crime was not a sufficient basis for an exceptional sentence because that interpretation would

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Abdi-Issa*, No. 99581-8
(Stephens, J., concurring in part, dissenting in part)

conceivably create a categorical exceptional sentence for any crime committed in

public:

> [T]he circumstances of this crime do not set it apart from many other murders committed in the presence of others. Violent crimes undoubtedly may cause psychological trauma to those unfortunate enough to witness the events. But that would be true if the crime were committed on a public street, in a theater or shopping mall, or in many places of employment. The fact that this crime was committed in a public place in the presence of adult onlookers is not a basis for imposing an exceptional sentence.

*Id*. at 834; *see also Cuevas-Diaz*, 61 Wn. App. at 905 ("We recognize that the crime

victim as well as the community suffer from criminal acts; however, such impact is

foreseeable and it exists in any case.").

Rather than broadly considering the community impact of a crime

committed in public, this aggravator requires proof of a more specific impact on an

individual or discrete class of individuals that is foreseeable to the defendant at the

time of their crime. A case may arise in which I would agree that the evidence

showed a specific individual or class of individuals was foreseeably impacted by

the crime of animal cruelty. But without an explanation of how the impact here

met that standard, the majority tacitly accepts the State's argument that

foreseeability is shown by the mere fact that the crime was committed in public

and, separately, that one of the witnesses, Ludin, experienced trauma.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Abdi-Issa*, No. 99581-8
(Stephens, J., concurring in part, dissenting in part)

Disassociating the two foundations of the aggravator in this way loses the thread of reasoning that supports it.

Not only does the majority's analysis minimize the concept of foreseeability in this aggravating factor, it also fails to consider any vulnerability on the part of the impacted nonvictim—a common feature in the precedent. Many cases involve children witnessing violent crimes at a school or in a domestic violence setting. For example, in the only case cited by the majority, the Court of Appeals upheld an exceptional sentence based on the impact of a school shooting witnessed by several children. *Chanthabouly*, 164 Wn. App at 145. In *Chanthabouly*, the court quoted the language from *Way* that rejected the application of this aggravator because the crime was committed in the presence of adults in public. *Id.* at 145 n.16. The court explicitly distinguished *Way* concluding, "This case can be distinguished from *Way* because Chanthabouly killed the victim in front of other children, not adult onlookers." *Id.*

In another case involving a shooting near an elementary school, this court did consider the impact of the shooting on adult parents in addition to children for the purposes of this aggravator. *State v. Johnson*, 124 Wn.2d 57, 73-75, 873 P.2d 514 (1994). But importantly, the court specifically related the impact on the parents back to their children because the shooting caused the "parents fear for the

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Abdi-Issa*, No. 99581-8
(Stephens, J., concurring in part, dissenting in part)

safety of their children while at school." *Id.* at 75. The distinction between the applicability of this aggravator to children as a vulnerable class and not to members of the general public who may witness a violent crime is consistent with previous cases applying this aggravator. *State v. Webb*, 162 Wn. App. 195, 206, 252 P.3d 424 (2011) (noting that the cases in which the aggravator has been applied have mainly included crimes witnessed by children). Ludin was simply not part of an identified vulnerable group that Abdi-Issa could foresee would suffer a destructive impact as a result of his crime.

Additionally, it remains unclear exactly how Abdi-Issa committed his crime "in a distinctive manner not usually associated with the commission of the offense in question." *Way*, 88 Wn. App. at 834. In its analysis of whether first degree animal cruelty may be designated a crime of domestic violence, the majority likens animal cruelty to other crimes against property, such as malicious mischief. Majority at 8. The majority draws this analogy by concluding, "Pets, as a matter of law, are considered personal property." *Id*. (citing *Sherman v. Kissinger*, 146 Wn. App. 855, 870, 195 P.3d 539 (2008)).[2] But presumably, this aggravating factor would not

---

[2] I do not believe this characterization of "pets" as "personal property" is necessary to the majority's analysis of the crime of animal cruelty as a crime of domestic violence. I do not read the majority to reject other arguments about the legal status of animal companions more generally.

7

apply to someone who, for example, commits malicious mischief by damaging personal property simply because they do so in public. *See* RCW 9A.48.090(1)(a). The majority does not provide any reason why animal cruelty should be treated differently from other property crimes given its statement that animals are considered property under the law. Nor does it preclude the possibility that a simple malicious mischief charge could carry this significant sentencing enhancement.

The unstated premise of the majority's conclusion that the impact of Abdi-Issa's crime on Ludin was sufficient for this aggravating factor seems to be that members of the community feel compassion or concern for animals in a way that distinguishes animals from other types of property. This would be a valid distinction, but to the extent it provides the majority's justification for allowing the aggravator, the fact remains that the crime of animal cruelty is different from malicious mischief. Therefore, the public impact of animal cruelty is already reflected in the higher standard range sentence for the crime. *Mulligan*, 87 Wn. App. at 267 (stating that the impact on a victim's family was already reflected in the standard range punishment for first degree murder because the "devastating impact of all such crimes was equally foreseeable by the Legislature when it set the standard range for first degree murder"). Relying on a broad and undefined "community impact" as a basis for an exceptional sentence lends itself to arbitrary application,

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Abdi-Issa*, No. 99581-8
(Stephens, J., concurring in part, dissenting in part)

and, in turn, raises the likelihood that this aggravator will be based on harmful or negative stereotypes. And the legislature's recognition of animal cruelty as a distinct crime already gives effect to society's special concern for animals even if they are regarded as a type of property.

Finally, it is important to emphasize that the majority's broad application of this aggravator has the potential to alter the dynamics in a criminal prosecution because it significantly increases a defendant's sentence, as it did for Abdi-Issa. Instead of the maximum 12-month sentence for animal cruelty, Abdi-Issa was sentenced to 18 months because of this aggravator. Because the jury instructions did not identify the "other" who was impacted by this crime, the State was effectively able to increase Abdi-Issa's sentence by 50 percent merely because he committed his crime in public and Ludin experienced a destructive impact. Without any apparent limit on the applicability of this aggravator, prosecutors may decide to allege this aggravator as a bargaining chip for potential plea negotiations with respect to any crime committed in public.

CONCLUSION

I cannot join a holding that dramatically expands the application of this sentencing enhancement factor that was intended to be narrow in scope without

9

*State v. Abdi-Issa*, No. 99581-8
(Stephens, J., concurring in part, dissenting in part)

significant analysis of how the circumstances of Abdi-Issa's conduct specifically

warrant it.  Accordingly, I respectfully dissent from that portion of the majority

opinion.

_____
                 Stephens, J.

_____
                 Madsen, J.

10