IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                   Respondent,<br><br>       v.<br><br>DANIEL CHRISTOPHER ADAMS,<br><br>                   Appellant. | No. 83591-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — Daniel Adams appeals his conviction for misdemeanor harassment on two grounds. First, he claims that the trial court violated his right to a fair trial by asking the jury to determine the household status of his victim when that was not an element of the crime of conviction. Adams also claims the Victim Penalty Assessment (VPA) violates the Eighth Amendment or art. I, § 14 of the state constitution. Finding no error, we affirm.

## FACTS

Adams lived with his cousin, Jennifer Surber, and Surber's fiancé Dareon Hall. Surber and Adams got into an argument, and Hall separated the two. Adams said to Hall, "I can't hit [Surber], but I can – I can hit you" and "I'll merk you."[1] Surber and Hall went to their bedroom where Hall sat with his back to the door because he was sure that he would have to "fend for myself and my fiancé." Hall testified that Adams was very angry and was pacing around "with a bat . . .

---

[1] Surber testified that the term "merk" means to "kill somebody."

talking to himself" on the other side of the door. Hall was afraid Adams would try to knock the door down. Surber called the police, who arrested Adams later that night.

The State charged Adams with two counts of felony harassment - domestic violence under RCW 9A.46.020(b)(i), one count pertaining to Surber and one to Hall. Each count also alleged gross misdemeanor harassment as a lesser included crime. The State further alleged the harassment constituted crimes of domestic violence under RCW 10.99.020 because Surber and Hall were family or household members of Adams as defined by RCW 26.50.010(6).[2] The amended information alleged two different alternative means for the crime of felony harassment. First, it alleged a prior conviction of harassment of a person named in a no-contact or no-harassment order under RCW 9A.46.020(2)(b)(i). Second, the amended information alleged that Adams threatened to kill the person or another person under RCW 9A.46.020(b)(ii).

After the State and defense rested, the court granted Adams's motion to dismiss the "prior conviction prong" of the felony harassment charge for insufficient evidence. The court discussed its changes to the proposed jury instructions with counsel, and Adams affirmed he had no objections to any of the court's instructions. Accordingly, the court instructed the jury using a modified "to convict" instruction on felony harassment that did not mention a prior conviction for a no contact order violation. The jury instructions included a special verdict

---

[2] Both RCW 10.99.020 and 26.50.010 were updated in 2022. As the relevant events took place in August 2021, and the State's amended information was filed in November 2021, we refer to the then-current versions of both statutes.

form that asked whether Adams was in the same family or household as Surber (Count 1) or Hall (Count 2) but only "[i]f you find the defendant guilty of these crimes." Instruction 22 explained,

> You will also be given special verdict forms for the crime(s) charged in Count 1 and 2. If you find the defendant not guilty of these crimes, do not use the special verdict forms. If you find the defendant guilty of these crimes, you will then use the special verdict forms and fill in the blank with the answer "yes" or "no" according to the decision you reach. In order to answer the special verdict forms "yes," you must unanimously be satisfied beyond a reasonable doubt that "yes" is the correct answer. If you unanimously agree that the answer to the question is "no," you must fill in the blank with the answer "no." If after full and fair consideration of the evidence you are not in agreement as to the answer, then do not fill in the blank for that question.

Instruction 23 stated: " 'Family or household member' means adult persons related by blood or marriage or adult persons who are presently residing together or who have resided together in the past."

The jury convicted Adams of a single count of misdemeanor harassment against Hall. It acquitted Adams of all other charges. As instructed, the jury completed the special verdict form and found Adams and Hall were "members of the same family or household prior to or at the time the crime was committed." The trial court sentenced Adams to 364 days with 24 months of probation, required him to enter domestic violence treatment, entered a no-contact order as to Hall, and imposed the statutory[3] $500 Victim Penalty Assessment (VPA) for gross misdemeanors. Adams timely appealed, and the court authorized his proceeding as an indigent.

---

[3] RCW 7.68.035.

3

ANALYSIS

Adams claims the trial court erred in two ways. First, Adams assigns error to the trial court's use of a special verdict form regarding family or household member status as a violation of his Sixth Amendment right to a fair trial. Second, Adams assigns error to the trial court's imposition of Washington's VPA as a violation of either the Eighth Amendment or art. I, § 14 of Washington's constitution.

I.    Special verdict question about same family or household

Adams argues that the trial court erred when it instructed the jury to find his family or household relationship with Hall because that finding was irrelevant to the crime charged. This instruction, Adams contends, violated his Sixth Amendment right to an impartial jury. The State argues Adams's assignment of error is unpreserved and not manifest, the special allegation verdict form is justified by statute, and any error was harmless. We agree with the State that the error is not manifest constitutional error.

Generally, a party waives the right to appeal trial error unless the party objects at trial. RAP 2.5(a); State v. Kalebaugh, 183 Wn.2d 578, 583, 355 P.3d 253 (2015). The general rule encourages parties to make timely objections a trial judge can address before the issue becomes an error on appeal. Id. There is, however, an exception for "manifest error affecting a constitutional right." RAP 2.5(a)(3); Id.

Courts must narrowly construe this exception. State v. Kirkman, 159 Wn.2d 918, 935, 155 P.3d 125 (2007). To apply it, courts ask two questions: (1)

Has the party claiming error shown the error is truly of a constitutional magnitude, and if so (2) has the party demonstrated that the error is manifest? Kalebaugh, 183 Wn.2d at 583.

A reviewing court does not assume assigned error is of constitutional magnitude. State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). Instead, the court assesses whether the alleged error implicates a constitutional interest as compared to other forms of trial error. Id. Where an appellant alleges denial of the Sixth Amendment's right to a fair trial, the court examines the allegation of a constitutional violation and the facts alleged by the defendant. Id. at 99. To satisfy the constitutional demand for a fair trial, jury instructions, when read as a whole, must correctly tell the jury of the applicable law, not be misleading, and permit the defendant to present his theory of the case. Id. at 105.

Adams did not object to the court's jury instructions below.[4] On appeal he argues that "household status was entirely [ir]relevant and wholly prejudicial,"[5] and "served no purpose other than to highlight the prejudicial nature of domestic violence." Adams correctly states that neither domestic violence nor family or household status is an element of the crime charged or a designation that can increase his punishment. The State's "designating a crime as one of domestic violence 'does not itself alter the elements of the underlying offense.' " State v. Abdi-Issa, 199 Wn.2d 163, 170, 504 P.3d 223 (2022) (quoting State v. O.P., 103

---

[4] CP 784. [Court: "All right, counsel. You have in front of you the Court's proposed instructions. . . . So any questions? Otherwise, we can put any objections on the record." Prosecutor: "No questions or objections from the State, Your Honor." Court: "All right, thank you." Defense counsel: "Nor from defense." Court: "All right."]

[5] While Adams's brief states "relevant," it is clear he means "irrelevant."

Wn. App. 889, 892, 13 P.3d 1111 (2000)). Nor does the designation itself increase a defendant's punishment. Abdi-Issa, 199 Wn.2d at 170.[6]

Because evidence of domestic violence or household status was unnecessary to prove the elements of the crime or enhance punishment, Adams argues the trial court's jury instructions and special verdict form were inherently prejudicial and prevented him from receiving a fair trial. In support, he cites State v. Gunderson, 181 Wn.2d 916, 925, 337 P.3d 1090 (2014), where the trial court improperly admitted evidence of prior domestic violence convictions. Gunderson, however, involved the admissibility of evidence under ER 404(b) and did not involve manifest constitutional error. Gunderson, 181 Wn.2d at 921.[7]

O'Hara lists examples of erroneous jury instructions that are "automatically of a constitutional magnitude": directing a verdict, shifting the burden of proof to the defendant, failing to define the 'beyond a reasonable doubt' standard, failing to require a unanimous verdict, and omitting an element of the crime charged. 167 Wn.2d at 103. Each is a violation "[o]n their face," because each example "obviously . . . violat[es] an explicit constitutional provision." Id. "In contrast, instructional errors not falling within the scope of RAP 2.5(a), that is—not

---

[6] While the domestic violence designation does not change the elements of the underlying offense or add punishment, it assures domestic violence victims the maximum protection the law can provide. Abdi-Issa, 199 Wn.2d at 169. In particular, domestic violence designated cases are given priority scheduling and courts may issue pretrial no-contact orders. Id. At sentencing, courts may also impose specialized no-contact orders, the violation of which constitutes a separate crime. Id.

[7] As the State points out, Adams does not suggest the trial court improperly admitted evidence of prior domestic violence or improperly commented on the evidence. To the contrary, after dismissing the prior conviction prong of the felony harassment charge, the trial court instructed the jury that testimony about a prior conviction for a no contact order violation was withdrawn, should not be considered for any purpose, and that the jury "must disregard it entirely.".

constituting manifest constitutional error—include the failure to instruct on a lesser included offense and failure to define individual terms." Id. The alleged error here is not one that the Supreme Court has characterized as "automatically of constitutional magnitude" and is more like those falling outside the scope of RAP 2.5(a). Adams does not challenge the instructions on the elements of felony or misdemeanor harassment.

Moreover, "manifestness requires a showing of actual prejudice." Kalebaugh, 183 Wn.2d at 584 (internal quotations omitted). To show actual prejudice, the appellant must make "a plausible showing . . . that the asserted error had practical and identifiable consequences in the trial of the case." Id. (internal quotations omitted).

Here, Adams acknowledges that the purpose of a special verdict form is to mitigate harm from a prejudicial element, citing State v. Oster, 147 Wn.2d 141, 147, 52 P.3d 26 (2002). Yet he argues that here, "[i]t seems more likely that separating one element from the others, particularly a more prejudicial element, heightens the prejudice rather than mitigated it" by placing "added emphasis" on it.

In Oster, the Court affirmed the use of bifurcated instructions and a special verdict form to determine a defendant's prior criminal history only after determining all the other elements of the crime charged. Oster, 147 Wn.2d at 147. The Court recognized the bifurcated instruction as an exception to the general rule that a jury can expect to receive a single "to convict" instruction. Id.

Similarly, here, like the court in Oster, the trial court used a bifurcated instruction so that the jury would consider the special verdict form only after determining guilt.[8] The jury followed this instruction,[9] as it found Adams guilty only as to Count 2 and, accordingly, answered the special verdict form only regarding whether Adams and Hall were members of the same family or household, not Adams and Surber. The bifurcated instruction protected Adams from any improper statement of the elements of the crime charged and was not manifest constitutional error.

Because Adams failed to object to the trial court's use of a special verdict form asking about a family or household relationship with Hall, and the claimed error is not manifest constitutional error, we decline to review this claim.

II.     Victim penalty assessment and excessive fines clause

Adams argues that the trial court erred by imposing the Victim Penalty Assessment without determining whether the VPA is grossly disproportionate, in violation of the federal and state constitutions that prohibit the imposition of excessive fines. U.S. CONST. amend. VIII; CONST. art. I, § 14; see also City of Seattle v. Long, 198 Wn.2d 136, 158, 493 P.3d 94 (2021).

Our supreme court previously addressed a challenge to VPA fees and held that "the [VPA] is neither unconstitutional on its face nor as applied to

---

[8] In Oster, the jury was instructed, "If you find the defendant not guilty of the crime of Domestic Violence Violation of a Court Order, as charged in count I, do not use Special Verdict Form A. If you find the defendant guilty, you will then use Special Verdict Form A and fill in the blank 'yes' or 'no' according to the decision you reach." Oster, 147 Wn.2d at 144-45. Here, jury instruction 22 stated, "If you find the defendant not guilty of these crimes, do not use the special verdict forms. If you find the defendant guilty of these crimes, you will then use the special verdict forms and fill in the blank with the answer 'yes' or 'no' according to the decision you reach."

[9] A jury is presumed to follow instructions. State v. Emery, 174 Wn.2d 741, 754, 278 P.3d 653 (2012).

indigent defendants." <u>State v. Curry</u>, 118 Wn.2d 911, 918, 829 P.2d 166 (1992). As this court has recently explained, we are bound by this precedent. <u>See</u> <u>State v. Tatum</u>, 23 Wn. App. 2d 123, 514 P.3d 763 (2022), <u>review denied</u>, 200 Wn.2d 1021 (2022); <u>State v. Ramos</u>, __ Wn. App. 2d __, 520 P.3d 65, 79 (2022) (same). We also declined in <u>Tatum</u> to interpret our state constitution's excessive fines clause "as extending its protections farther than the Eighth Amendment's." 23 Wn. App. 2d at 133-34; <u>see also</u> <u>Ramos</u>, __ Wn. App. 2d at __, 520 P.2d at 76.

Given this clear precedent, the trial court did not err in imposing VPA fees without assessing proportionality based on Adams's asserted indigency.

We affirm.

_Chung, J._

WE CONCUR:

_Díaz, J._          _Bumm, J_