# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No. 61316-6-II |
| ERNEST DALE BENSON, JR., | |
| | PUBLISHED OPINION |
| Petitioner. | |

MAXA, P.J. – In this personal restraint petition (PRP), Ernest Dale Benson, Jr. seeks relief from a Department of Corrections (DOC) decision ordering him to return to prison based on an alleged miscalculation of earned release time (ERT).

In 1995, Benson pleaded guilty to two counts of aggravated first degree murder. After a resentencing in 2024, the trial court amended his sentence from life without parole (LWOP) to two concurrent 40 year sentences.

DOC initially granted Benson an ERT credit of 33.33 percent of his sentence, which allowed him to be released from confinement. But DOC later determined that Benson was entitled to only a 15 percent ERT credit under RCW 9.94A.729(3)(b).

RCW 9.94A.729(3)(b) states that an offender convicted of a "serious violent offense" committed on or after July 1, 1990 and before July 1, 2003 is eligible for a maximum ERT of 15 percent of the sentence. RCW 9.94A.030(46) includes first degree murder as a "serious violent

offense," but not aggravated first degree murder. Benson argues that RCW 9.94A.729(3)(b) is inapplicable because aggravated first degree murder is not within the definition of a "serious violent offense."

We hold that aggravated first degree murder is a "serious violent offense" under RCW 9.94A.729(3)(b), meaning that Benson is entitled only to a 15 percent ERT credit. Therefore, Benson fails to establish that he is under unlawful restraint. Accordingly, we deny Benson's PRP.

FACTS

In 1995, Benson pleaded guilty to two counts of aggravated first degree murder. He was 20 years old at the time of the offenses. An LWOP sentence was mandatory for aggravated first degree murder, former RCW 10.95.030 (1993), and the trial court sentenced him to two LWOP terms.

In 2021, the Supreme Court held that mandatory LWOP sentences for offenders between the ages of 18 and 20 violated the Eighth Amendment to the United States Constitution. *In re Pers. Restraint of Monschke*, 197 Wn.2d 305, 329, 482 P.3d 276 (2021). In 2024, the Supreme Court also held that a court may impose determinate sentences for people convicted of aggravated first degree murder whose LWOP sentences were invalidated by *Monschke*. *State v. Carter*, 3 Wn.3d 198, 548 P.3d 935 (2024). Accordingly, in November 2024, the trial court resentenced Benson to two concurrent 40 year sentences.

In March 2025, DOC released Benson from confinement based on a determination that he was entitled to receive a 33.33 percent ERT. However, after his release, DOC determined that aggravated first degree murder is a "serious violent offense" that qualifies only for a maximum of 15 percent ERT under RCW 9.94A.729(3)(b). As a result, Benson was returned to prison.

Shortly before his return to prison, Benson filed this PRP. Benson also filed an emergency motion for release pending disposition of his PRP, which a commissioner of this court denied. This court accelerated review of Benson's PRP.

ANALYSIS

A.     PRP PRINCIPLES

RAP 16.4(a) states that we will grant appropriate relief if a person is under unlawful restraint. RAP 16.4(b) states that a person is under restraint if "the petitioner has limited freedom because of a court decision in a civil or criminal proceeding, the petitioner is confined, the petitioner is subject to imminent confinement, or the petitioner is under some other disability resulting from a judgment or sentence in a criminal case."

To prevail in a PRP, the petitioner must establish by a preponderance of the evidence (1) a constitutional error that resulted in actual and substantial prejudice or (2) a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Meredith*, 191 Wn.2d 300, 306, 422 P.3d 458 (2018).

B.     APPLICABILITY OF RCW 9.94A.729(3)(b)

Benson argues that he is entitled to a 33.33 percent ERT credit because aggravated first degree murder is not within the statutory definition of "serious violent offense," and therefore RCW 9.94A.729(3)(b) is inapplicable. We disagree.

1.     Statutory Interpretation

Statutory interpretation is a question of law that we review de novo. *State v. Abdi-Issa*, 199 Wn.2d 163, 168, 504 P.3d 223 (2022). The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. *Id.* To determine the legislature's intent, we first look to the plain language of the statute, considering the language of the provisions in

3

question, how the provisions fit within the context of the statute, and the statutory scheme as a whole. *Id.* at 168-69. If a word is not defined in the statute, we can consider dictionary definitions to attempt to determine the word's ordinary meaning. *State v. Hribar*, 34 Wn. App. 2d 546, 554, 569 P.3d 743, *review denied*, 5 Wn.3d 1014 (2025).

The language of a statute is ambiguous if it is susceptible to more than one reasonable interpretation. *State v. M.V.*, 33 Wn. App. 2d 658, 662, 564 P.3d 564 (2025). We "first attempt to resolve the ambiguity and determine the legislature's intent by considering other indicia of legislative intent, including principles of statutory construction, legislative history, and relevant case law." *Id.* "If these indications are insufficient to resolve the ambiguity, the rule of lenity requires that we interpret the ambiguous statute in favor of the defendant." *Id.*

One principle of statutory construction is that courts generally interpret ambiguous language to avoid absurd results. *State v. Schwartz*, 194 Wn.2d 432, 443, 450 P.3d 141 (2019). We presume that the legislature did not intend absurd results. *Id.*

2.    Relevant Statutes

RCW 10.95.020 states that a person is guilty of aggravated first degree murder if "he or she commits first degree murder as defined by RCW 9A.32.020(1)(a). . . and one or more of the following aggravating circumstances exist."[1] The statute then lists a number of aggravating circumstances. RCW 10.95.020(1)-(14).

RCW 9.94A.729 states in part,

(3) An offender may earn early release time as follows:
. . . .
(b) In the case of an offender convicted of a serious violent offense, or a sex offense that is a class A felony, committed on or after July 1, 1990, and before

---

[1] The version of RCW 10.95.020 in effect at the time of Benson's offense had identical language but referred to RCW 9A.32.030(1)(a). LAWS OF 1994, Ch. 121. § 3. Because this change is not relevant, we cite to the current version of the statute.

July 1, 2003, the aggregate earned release time may not exceed 15 percent of the sentence.

. . . .

(e) In no other case shall the aggregate earned release time exceed one-third of the total sentence.

The definition of "serious violent offense" in RCW 9.94A.030(47) lists several offenses, including first degree murder, second degree murder, first degree manslaughter, first degree assault, and first degree kidnapping. The list does not include aggravated first degree murder.[2]

3.    Analysis

The issue here is whether RCW 9.94A.729(3)(b) or RCW 9.94A.729(3)(e) applies to Benson's sentence. RCW 9.94A.729(3)(b) applies only if aggravated first degree murder is a serious violent offense.

Benson argues that because aggravated first degree murder does not appear in RCW 9.94A.030(47)'s definition of serious violent offense, the legislature necessarily excluded that offense from the possible crimes to which the maximum 15 percent ERT applies. This argument is based on the assumption that aggravated first degree murder is distinct from first degree murder.

This assumption is incorrect. The plain language of RCW 10.95.020 states that aggravated first degree murder is a type of first degree murder. " 'A person is guilty of aggravated first degree murder *if he or she commits first degree murder* as defined by RCW 9A.32.030(1)(a)' and one or more statutory aggravating circumstances exists." *State v. Roberts*, 142 Wn.2d 471, 501, 14 P.3d 713 (2000) (emphasis added) (quoting RCW 10.95.020).

---

[2] The definition in effect in 1995 when Benson was convicted of his offenses also included first degree and second degree murder but not aggravated first degree murder. Former RCW 9.94A.030(29) (1994).

" '[A]ggravated first degree murder is not a crime in and of itself; the crime is *premeditated* murder in the first degree . . . accompanied by the presence of one or more . . . statutory aggravating circumstances.' " *State v. Thomas*, 166 Wn.2d 380, 387, 208 P.3d 1107 (2009) (quoting *Roberts*, 142 Wn.2d at 501) (internal quotation marks omitted). And a jury determines whether aggravating factors are present such that first degree murder is elevated to aggravated first degree murder. *Thomas*, 166 Wn.2d at 387.

Benson argues that if the legislature wanted aggravated first degree murder to qualify only for a 15 percent ERT credit, it would have included that offense in the definition of "serious violent offense" in RCW 9.94A.030(47). But at the time of Benson's crime, the legislature prohibited a person convicted of aggravated first degree murder from receiving *any* ERT. Former RCW 10.95.030. A person convicted of aggravated first degree murder was ineligible to receive ERT because the mandatory sentence was LWOP. Therefore, there was no need to include aggravated first degree murder in the definition of "serious violent offense." When *Monschke* invalidated LWOP sentences for young adults, the legislature did not need to add aggravated first degree murder to the definition of "serious violent offense" because that definition already included first degree murder. As discussed above, aggravated first degree murder is a type of first degree murder, not a standalone offense.

We also avoid interpreting statutes in a manner that produces absurd results. *Schwartz*, 194 Wn.2d at 443. The legislature has determined that aggravated first degree murder has the highest seriousness level of any offense. RCW 9.94A.515. Benson's interpretation would create an absurd result that aggravated first degree murder would receive more generous ERT credit than lesser felonies that the legislature identified as seriously violent, such as first degree assault

6

and first degree kidnapping.  We decline to interpret RCW 9.94A.729(3)(b) in a manner that plainly contradicts the legislature's hierarchy of offenses.

Because Benson's conviction is only eligible for a maximum of 15 percent ERT, Benson is not under unlawful restraint.  Therefore, we cannot grant him relief.  RAP 16.4(a)-(b).

CONCLUSION

We deny Benson's PRP.

MAXA, P.J.

We concur:

LEE, J.

CRUSER, J.